A04A2231. BOND v. THE STATE.
(610 SE2d 609)

MIKELL, Judge.

James Christopher Bond appeals his conviction of possession of cocaine, arguing that the trial court erred in denying his motion to suppress evidence. In five enumerated errors, Bond argues that his arrest, detention and search were unlawful and that his statement was induced by hope of benefit. We affirm.

"In reviewing a trial court's ruling on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them."[1]

Properly viewed, the evidence adduced at the motion hearing shows that on May 30, 2003, Bond and five friends set up camp at the Waterfall Campground in Sarah's Creek, an area in Rabun County located within the United States Forest Service. Scott Crane, a Clayton County police officer who works part-time for the Rabun County Sheriff's Department, which assists the Forest Service in the summer, checked the campground between 5:00 p.m. and 6:00 p.m. Crane testified that the group was playing loud music and drinking alcohol. Although he was wearing his uniform and driving a marked vehicle, they offered him a drink. Crane told them to turn the music down so as not to disturb other campers, and then he left.

Crane reported the group to Leonard Stuart DeLugach, the Forest Service law enforcement officer assigned to Rabun County. Crane testified that his training and experience led him to believe that the situation at the campground might escalate, so he and DeLugach decided to take two or three other officers and return to observe the group.

The officers arrived at the campground after dark, at approximately 10:00 p.m. They stopped their vehicle a few hundred yards west of the campground. Crane and DeLugach walked up to a distance of about 35 yards away, hid, and observed the group. The campsite was lit by lanterns and a fire, so the officers were able to see the group's activities. Crane testified that he saw two persons make

---

[1] (Citation and punctuation omitted.) *Elzey v. State*, 239 Ga. App. 47 (519 SE2d 751) (1999).

chopping motions on what appeared to be a CD case. Crane said it looked like someone had placed cocaine or methamphetamine on the CD case and was "cutting a line."

DeLugach testified that he observed four individuals sitting around the fire smoking a pipe, which was consistent with marijuana use. He identified the individuals by surname — Dyer, Akridge, Daniels and Singson. DeLugach did not see Bond smoking the pipe but identified Bond as being at the campsite.

Crane testified that the officers entered the campsite within 15 minutes after observing the suspected drug use. He and DeLugach identified themselves and asked Daniels and Akridge for consent to search their persons. Consent was given. A baggie of cocaine was found on Akridge, and a large bag of marijuana was found on Daniels. According to Crane, the officers then began to search the campground. Crane testified that he did not search Bond's person but that each person was ultimately found in possession of a baggie of cocaine. Crane further testified that no one was arrested at that point and that he turned the situation over to DeLugach.

DeLugach testified that when he and the other officers entered the camp, he advised the group that they were there to investigate possible marijuana usage and that if "all we were dealing with was a little bit of marijuana, if they would be willing to surrender it to me, I could write the ticket, that I did not have to take them to jail." According to DeLugach, that is standard policy on Forest Service land. DeLugach further testified that Akridge then pulled a small amount of cocaine out of his pocket. Another officer saw a large bulge in Daniels's pants pocket and asked Daniels to remove it. The bulge was marijuana. The officers seized the drugs and searched the camp. Cocaine was found on several subjects, as well as in Akridge's tent.

DeLugach further testified that the officers asked the subjects if they had any weapons, and they said that they had nothing other than some knives. However, one of the officers looking through the window of one of the vehicles saw what appeared to be a pistol on the floorboard. After receiving this information, DeLugach requested that everyone be placed into handcuffs for the officers' safety. The device in question turned out to be a nickel-plated cigarette lighter shaped like a pistol.

After finding cocaine, DeLugach summoned Special Agent Sean Wilson with the Northeast Georgia Drug Task Force. DeLugach testified that no one had been placed under arrest; rather, he was going to let Wilson make that decision. Both DeLugach and Crane testified that they were in the campsite for about an hour before calling Wilson and that it took him about 30 minutes to arrive.

All six subjects were still handcuffed when Wilson reached the campsite. Wilson testified that DeLugach informed him that no drugs

had been found on Bond. Wilson requested that Bond's handcuffs be removed and advised him of his *Miranda* rights. According to Wilson, Bond agreed to make a statement outside the presence of an attorney. Bond told Wilson that he had used marijuana as well as cocaine an hour or so earlier. Based on that statement, Wilson searched Bond and found cocaine in his right pants pocket. Bond stated that he did not know how the cocaine got in his pocket and that he had not paid for it. Wilson terminated the interview.

The defense called as witnesses two of the individuals who had been arrested at the campsite, Matteson and Akridge. Both men had pleaded guilty to possession of cocaine arising from the incident. Matteson testified that he was told that he would not be taken to jail if he cooperated and that he would be permitted to remain at the campsite. He further testified that the officers told him that they had made the same offer to Bond. Matteson did not hear any statements made privately to Bond, but he testified that the officers initially made a statement in front of the entire group that neither he nor Bond would be taken to jail. Finally, Matteson testified that the statement was made to him before Wilson arrived. Once Wilson informed Matteson that he would be arrested, Matteson admitted having cocaine on his person.

Akridge testified that a law enforcement officer, whom he could not identify, stated that Bond and Matteson "were not going to jail because they were not observed doing anything." On cross-examination, Akridge testified that he brought an "eight ball" of cocaine, or three and a half grams, to the campsite; that he cut it up and placed it on the table; and that he did not know who snorted it other than himself because they had all been drinking for several hours. Bond did not testify.

Based on this testimony, the trial court denied Bond's motion to suppress. The court concluded that Bond's statement that he had used cocaine and marijuana an hour earlier gave Wilson probable cause to arrest Bond as a party to the crime of possession of controlled substances. The court also determined that Bond was searched incident to his lawful arrest. Bond then proceeded to a bench trial on stipulated facts, and the court found him guilty of possession of cocaine. He was sentenced to five years on probation. This appeal followed.

1. In two enumerated errors, Bond challenges the voluntariness of his statement to Wilson, arguing that it was induced by hope of benefit and that the state failed to prove that he was properly advised of his *Miranda* warnings. Bond argues that he preserved the issue for appellate review by filing a motion for a *Jackson-Denno* hearing, a motion in limine to exclude his statements, and by arguing the issue

during the hearing on the motion to suppress. Although Bond introduced evidence at the hearing on the issue of whether his statement was induced by hope of benefit, he failed at the hearing and later at trial to invoke a ruling on the issue from the trial court. "When an appellant fails to invoke a ruling on his motion, he has waived the issue for purposes of appeal."[2] At the conclusion of the hearing, Bond's counsel began to argue that Bond's statement was induced by hope of benefit. The court stopped counsel, stating that he had not moved to suppress the statement. Counsel stated that he planned to do so, and the court replied that it would take up the motion at the appropriate time. Although counsel had already filed the proper motion, he did not point that fact out to the trial court at the hearing.

The record further shows that at the bench trial, Bond again did not seek a ruling on the issue. When the parties were stipulating to the facts, the prosecutor stated that he had not addressed the issue of the voluntariness of Bond's statements at the suppression hearing, given the court's custom of reserving *Jackson-Denno* issues until trial. Bond's counsel replied that he did not believe that *Jackson-Denno* would be an issue on appeal; rather, the issue was the lawfulness of the arrest. The court clarified its ruling to be that Bond's statement that he had smoked cocaine and marijuana authorized his arrest, and the court expressly stated that it had not ruled on the issue of whether the statement was freely and voluntarily given so as to support a conviction. Bond invoked no further ruling from the court. Under these circumstances, Bond has waived his right to argue on appeal that his statement was induced by hope of benefit and that he was not properly advised of his *Miranda* rights.

2. In his remaining enumerated errors, Bond argues that his arrest and search incident thereto were unlawful, primarily asserting that the arrest was not supported by probable cause. In felony cases, "[a] warrantless arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense."[3]

Bond argues that his detention in handcuffs amounted to an arrest and that he was illegally detained without probable cause for over two hours. He asserts that because the officers did not observe

---

[2] (Punctuation and footnote omitted.) *Wright v. State*, 259 Ga. App. 74, 77 (3) (a) (576 SE2d 64) (2003) (motion in limine seeking severance). Accord *Delong v. State*, 185 Ga. App. 314 (363 SE2d 811) (1987).

[3] (Citation and punctuation omitted.) *Tukes v. State*, 236 Ga. App. 77, 79-80 (2) (b) (511 SE2d 534) (1999).

him smoking marijuana or snorting cocaine prior to placing him in handcuffs, they did not have probable cause to effectuate that arrest. First, contrary to Bond's assertion, there is no evidence as to the precise length of time he was handcuffed. Rather, DeLugach testified that the entire process began at approximately 11:00 p.m. and that Wilson arrived at 12:30 a.m. Wilson then testified that Bond's handcuffs were removed shortly after Wilson arrived at the camp. Accordingly, although there was evidence that Bond's handcuffs were not removed until at least 12:30 a.m., there was no evidence as to the time handcuffs were placed on him. Moreover, we find that the evidence supports the trial court's finding that Bond was not arrested prior to the time he made the statement concerning his drug use. Rather, the testimony shows that all of the campers were placed in handcuffs to ensure the safety of the officers after a device resembling a weapon was discovered.[4] Bond was neither searched nor interviewed before Wilson arrived, and Wilson had Bond's handcuffs removed before speaking with him. Bond then told the officer that he had used cocaine and marijuana earlier that evening. This statement provided Wilson with probable cause to believe that Bond was, at least, a party to the crime of possession of cocaine.[5] Wilson's subsequent search of Bond was lawful as incident to his arrest. "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of . . . [d]iscovering or seizing the fruits of the crime for which the person has been arrested."[6] For these reasons, the trial court did not err in denying Bond's motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 15, 2005 —
RECONSIDERATION DENIED MARCH 3, 2005.

*McDonald & Cody, Douglas W. McDonald, Jr.*, for appellant.
*Michael H. Crawford*, District Attorney, *Robert D. Cullifer*, Assistant District Attorney, for appellee.

---

[4] See, e.g., *Bolden v. State*, 278 Ga. 459, 462 (3) (604 SE2d 133) (2004) (defendant transported to police station in handcuffs as safety measure was not under arrest); *Paradise v. State*, 212 Ga. App. 166, 167 (1) (441 SE2d 497) (1994) (defendant inadvertently handcuffed en route to police station was not under arrest).

[5] See, e.g., *Moody v. State*, 232 Ga. App. 499, 505 (4) (b) (502 SE2d 323) (1998) (defendant's presence during execution of search warrant coupled with his flight provided probable cause for arrest as a party to the possession of unlawful contraband).

[6] OCGA § 17-5-1 (a) (3).