A08A1653. MORA v. THE STATE.
(673 SE2d 23)

MIKELL, Judge.

A Cobb County jury found Cesar Mora guilty of rape, statutory rape, and two counts of child molestation for sexually abusing his wife's twelve-year-old sister, N. P. The trial court merged the statu-

---

tory rape conviction into the rape conviction and sentenced Mora to life imprisonment. Concurrent with the life sentence, the court also imposed a 20-year sentence for the child molestation convictions. On appeal, Mora claims that the trial court erred (1) in denying his motion for a directed verdict, (2) in admitting his custodial statements, and (3) in denying his motion for new trial on grounds of ineffective assistance of trial counsel. For the reasons that follow, we disagree and affirm.

1. Mora argues that the trial court erred in denying his motion for a directed verdict of acquittal on the rape charge because there was no evidence of force as required by OCGA § 16-6-1. We disagree.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve.[1]

So viewed, the evidence shows that in September 2003, N. P. and her mother moved into an apartment with Mora and his wife Jasmine, N. P.'s sister. According to N. P., Mora molested her several times in October 2003. During the first incident, Mora touched N. P.'s breasts, buttocks, and vagina. Approximately one week later, Mora approached N. P. while her mother and sister were at work and asked her to have sex with him. When N. P. refused, Mora offered to pay her. N. P. again refused and Mora grabbed her hands, threw her on the sofa, and kissed her. Mora then removed N. P.'s pants and had sex with her. N. P. testified that she was crying and telling Mora "no" and "to leave her in peace" and that Mora told her that if she told anybody they would get "run out of the apartment." N. P. testified that she was scared and that Mora had sex with her at least two more times that month. On another occasion, Mora came into his bedroom where N. P. and her two-year-old nephew were watching television and put in a pornographic movie. Mora then put on a condom and told N. P. to masturbate him. N. P. eventually told her mother and stepfather that Mora raped her, and they reported it to the police.

Detective Ralph Escamillo of the Cobb County Police Crimes Against Children Unit investigated the report made by N. P.'s mother

---

[1] (Footnote omitted.) *Cole v. State*, 279 Ga. App. 219 (1) (630 SE2d 817) (2006).

and stepfather, and interviewed N. P. During the interview, N. P. told Escamillo that Mora raped her three times; that Mora forced N. P. to masturbate him; and that Mora gave N. P. $150. After interviewing N. P., Escamillo executed a search of Mora's apartment, where he recovered a pornographic videotape. Mora was arrested at the apartment and taken to the police station, where Escamillo read him his *Miranda* rights in Spanish and then conducted a taped interview. During the interview, Mora initially told Escamillo that N. P. was lying, but then changed his story and explained that N. P. masturbated him and that he had sex with her twice because she "came onto him." Mora also stated that he gave N. P. $50 the first time they had sex.

At trial, Mora acknowledged having sex with N. P. two times. He testified that she seduced him. He explained that he initially lied to Escamillo because he was afraid his wife would find out that he had been unfaithful to her.

Under OCGA § 16-6-1, "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." "The term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation."[2] Only minimal evidence of force is required in order to prove rape of a child.[3] Moreover, "[l]ack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him."[4] Mora contends that there was no evidence that he had sex with N. P. forcibly. He points out that N. P. did not tell anyone about the rape until several months later and the state presented no medical evidence of any force on her body. According to Mora, the evidence showed that N. P. "was paid for sexual favors."

N. P. testified that the first time she had intercourse with Mora he grabbed her hands and threw her on the couch; that she was scared and crying; and that he warned her that she would be run out of the apartment if she told her mother. This evidence was sufficient to prove the element of force necessary to support the rape conviction.[5] The trial court did not err in denying the motion for a directed

---

[2] (Punctuation and footnote omitted.) *Stroud v. State*, 284 Ga. App. 604, 608 (1) (644 SE2d 467) (2007).

[3] See *Pollard v. State*, 260 Ga. App. 540, 542-543 (3) (580 SE2d 337) (2003).

[4] (Citation and punctuation omitted.) *Wightman v. State*, 289 Ga. App. 225, 228 (1) (656 SE2d 563) (2008).

[5] See id. See also *Pollard*, supra; *Skillern v. State*, 240 Ga. App. 34-35 (1) (521 SE2d 844) (1999).

644

verdict of acquittal on the rape charge.

2. Mora contends that the trial court erred in admitting his statements to Escamillo because they were the result of coercion and were not freely and voluntarily made. Mora argues that Escamillo coerced him into speaking by promising not to tell his wife and by lying to him about having found his DNA on a tissue N. P. wiped herself with after the sexual act. He also alleges that Escamillo coerced him into confessing by telling him that the sexual acts were not serious because they were consensual.

The record reflects that the state sought a *Jackson-Denno* hearing "out of an abundance of caution" and that defense counsel agreed to proceed with the hearing.[6] During the hearing, Escamillo testified that he interviewed Mora at the Cobb County Police Department; that Mora was in custody and was not free to leave; that he spoke with Mora primarily in Spanish; that he read Mora his *Miranda* rights in Spanish and gave Mora an opportunity to read the form himself; that Mora read through the form before he signed it; and that he did not threaten or coerce Mora and did not offer a hope of benefit to him. At one point during cross-examination, the state objected that defense counsel was going beyond the scope of whether Mora's statements were voluntary and whether he was given suffi-cient *Miranda* warnings. Defense counsel agreed that the purpose of the hearing was to determine whether the statements were volun-tary. The trial court then invited defense counsel to point out any specific instances in the videotape of the interview where Escamillo may have threatened Mora.[7] Defense counsel proceeded to question Escamillo about the search of Mora's home and his discussions with Mora's wife about Mora's whereabouts. The trial court ruled that Mora's statements were voluntary and admissible, but that defense counsel could object during the trial if the videotape reflected anything improper. During the trial, the videotape was played for the jury. On the videotape, Escamillo implores Mora to tell the truth and states, "[i]f it's a case where you were alone and both of you wanted to have relationship, that's one thing because it's not that serious. But if she's saying that you had relations and you forced her by force and she wanted to, now I have proof." When Mora responds by

---

[6] Although Mora filed a "Preliminary Motion to Suppress" any post-arrest statements, he did not point that fact out to the trial court at the *Jackson-Denno* hearing or invoke a ruling on the motion from the trial court. In fact, trial counsel did not dispute the state's claim that it had not "received any kind of particularized motion to suppress" Mora's statements. "When an appellant fails to invoke a ruling on his motion, he has waived the issue for purposes of appeal." (Punctuation and footnote omitted.) *Bond v. State*, 271 Ga. App. 849, 852 (1) (610 SE2d 609) (2005).

[7] By agreement of the state and defense counsel, the videotape of the interview was not played for the trial court.

explaining that he gave N. P. money to prevent her from being "ugly" to her mom and that N. P. masturbated him, Escamillo further states:

> Cesar, I don't want you to make a lot of problems for yourself. I am trying to explain to you if we, the police department, charge you and you're doing these things to her against her will because she didn't give you permission and didn't want to, these are very strong charges. If these are charges that you just had sexual relations with her because she wanted to have relations with you because both of you wanted to, it's not as big.

Mora then tells Escamillo that N. P. came onto him and that they had sex two times. Counsel did not object to admission of the videotape or Mora's statements.

"In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground."[8] In *Williams*,[9] we recognized that

> a defendant who objects to the admissibility of a custodial statement, but receives an unfavorable ruling at a *Jackson-Denno* hearing, need not renew the objection at trial to preserve it for appellate review. This is so because the trial court has been apprised of the possible error in admitting the evidence and has made its ruling. To fully inform the trial court and permit a ruling, however, the defendant must articulate the *specific* basis for objecting to the statement.[10]

In that case, we found that even though the defendant made an objection as to the voluntariness of his confession, he did not timely assert a Fourth Amendment objection to the admissibility of his

---

[8] (Punctuation and footnote omitted.) *Williams v. State*, 270 Ga. App. 480, 481-482 (606 SE2d 671) (2004).

[9] Id.

[10] (Punctuation and footnotes omitted.) Id. at 482. See also *Carreno v. State*, 272 Ga. App. 229, 230 (1) (a) (612 SE2d 62) (2005) (even though defendant objected to voluntariness, she failed to object to confession as inadmissible result of an illegal detention and therefore waived the argument on appeal), citing *Williams*, supra; *Thomas v. State*, 264 Ga. App. 389, 391 (1) (590 SE2d 778) (2003) (in absence of any contention at trial that defendant's confession was not voluntary, trial court did not err in admitting it).

custodial statements and, therefore, waived the argument on appeal.[11]

In this case, Mora acquiesced in the decision to hold a *Jackson-Denno* hearing and participated in the hearing; however, counsel never articulated a specific basis for objecting to the admission of Mora's statements to Escamillo, i.e., that police lied to him and/or coerced him into confessing. In fact, the record demonstrates the contrary. During the *Jackson-Denno* hearing, counsel acknowledged that Escamillo could mislead Mora about the amount of inculpatory evidence possessed by the police. Moreover, Mora agreed to the decision not to play the videotape during the *Jackson-Denno* hearing and then ignored the trial court's express invitation to object when the videotape was ultimately played.[12] In light of these circumstances, Mora has waived the issue on appeal.[13]

3. Mora contends that the trial court erred in denying his motion for new trial because he did not receive effective assistance of counsel. Mora complains of 15 instances of purported deficiencies in trial counsel's performance. However, he only supports six of these with any sort of argument, maintaining that the fifteen instances "cumulatively amount up to ineffective assistance." The errors not supported by argument or citation to authority are hereby waived.[14]

> In order to prove his claim of ineffective assistance of counsel, [Mora] must establish both prongs of the test set out in *Strickland v. Washington*:[15] (1) that his trial counsel's performance was deficient and (2) that counsel's inadequate performance so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. Failure to satisfy either prong of this two-part test is fatal to an ineffective assistance claim.[16]

"[A] trial court's finding that a defendant has been afforded effective assistance of counsel will be affirmed on appeal unless clearly erroneous."[17]

(a) Mora first contends that his retained trial counsel was

---

[11] *Williams*, supra.

[12] Although Mora complains of fifteen instances in which he maintains that trial counsel's performance was deficient, counsel's failure to object on this issue is not one of the instances. See Division 3, infra.

[13] *Williams*, supra.

[14] Court of Appeals Rule 25 (c) (2).

[15] 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984).

[16] (Footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008).

[17] (Footnote omitted.) *White v. State*, 293 Ga. App. 241, 242 (1) (666 SE2d 618) (2008).

ineffective because she never showed him the videotape of his interview with Escamillo and, therefore, he was ill-prepared to testify at trial. While Mora asserts that counsel was ineffective on this ground, he does not explain *why* watching the videotape would have prepared him to testify and makes no attempt to demonstrate *how* he was harmed by this alleged failure. A mere conclusory allegation, without more, is insufficient to establish ineffective assistance of counsel.

(b) Mora next contends that counsel was ineffective because she failed to meet with him an adequate number of times/hours or review discovery with him. However, Mora's counsel testified that she met with him two or three times for a "[c]ouple of hours" though she could not recall exactly how many and that she reviewed discovery with him prior to trial. "Contrary to [Mora's] argument, there exists no magic amount of time which counsel must spend in actual conference with his client."[18] Moreover, the trial court is entitled to resolve any factual conflict and credit the testimony of trial counsel over that of Mora.[19] Regardless, Mora again fails to demonstrate *how* he was harmed by this alleged failure. Accordingly, the trial court did not err in rejecting this claim.

(c) Mora also contends that counsel was ineffective because she failed to inform him that the state intended to prosecute him as a recidivist, OCGA § 17-10-7, or explain the consequences of a life sentence. While the record reflects that trial counsel was confused about OCGA § 17-10-7 and that she did not know the state intended to prosecute Mora as a recidivist, she testified that there is always a possibility of a life sentence for rape and that she discussed this possibility with Mora. She further explained that the state offered Mora a plea of 20 years but that Mora "was emphatic that he was not pleading guilty to rape." Although Mora contradicted trial counsel's testimony during the hearing on his motion for new trial, he never testified that he would have accepted a plea offer had he known that he was facing the prospect of being sentenced as a recidivist. In fact, Mora's testimony during the hearing on his motion for new trial confirms trial counsel's testimony that Mora was bent on proving his innocence: "I asked [trial counsel] if we could work out any kind of a plea. That is, I just wanted an opportunity to show that I wasn't guilty of any kind of a rape. And I asked her [at trial] if she couldn't obtain a reduction or a dismissal of the rape charge because I didn't rape anybody or do anything." Accordingly, he has failed to show

---

[18] (Citation, punctuation and footnote omitted.) *Mikell v. State*, 281 Ga. App. 739, 748 (6) (b) (637 SE2d 142) (2006).

[19] See id.

that counsel's alleged deficiency affected the outcome of his trial. Moreover, as we noted in Division 3 (b), supra, the trial court was authorized to accept trial counsel's testimony that she told Mora he faced a possible life sentence and reject Mora's testimony to the contrary.[20]

(d) Mora next contends that trial counsel was ineffective in failing to hire an expert to rebut the state's interview techniques of N. P. Mora argues that an expert was necessary because there were questions about whether N. P. used the word "rape" or "abuse" during her interview with Escamillo.

Mora again makes the conclusory allegation that counsel was ineffective on this ground, but fails to point out *why* or *how* Escamillo's interview techniques were improper. Moreover, Mora did not proffer any expert testimony at the hearing on his motion for new trial. As this Court has held repeatedly, "[a]bsent a proffer of what the testimony of his expert would have been at trial, [Mora] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course."[21] Accordingly, Mora did not establish prejudice, and the trial court did not err in rejecting his claim of ineffective assistance of counsel.

(e) Mora contends that trial counsel was ineffective in failing to submit a request to charge statutory rape as a lesser included offense of rape. In this case, Mora was charged with forcible rape, statutory rape, and two counts of child molestation, arising from the three incidents of sexual intercourse and the single act of masturbation. The forcible rape count of the indictment did not allege N. P.'s age. As a matter of law, statutory rape is not a lesser included offense of rape because of the additional element of "age."[22] Even if this were not the case, at the motion for new trial hearing, defense counsel testified that Mora was emphatic that he was not guilty of rape and that asking for a charge on the lesser included offense of statutory rape would have gone against this strategy. As we have held, "trial counsel's decision not to request a jury instruction for a lesser included offense in order to pursue an 'all or nothing defense' can constitute a matter of trial strategy that does not amount to ineffective assistance of counsel."[23] Such is the case here. Accordingly, the trial court did not err in rejecting this claim.

---

[20] See *Copeland v. State*, 281 Ga. App. 11, 14-15 (3) (d) (635 SE2d 283) (2006).

[21] (Footnote omitted.) *White*, supra.

[22] See *Hill v. State*, 246 Ga. 402, 405 (III) (271 SE2d 802) (1980); *Freeman v. State*, 291 Ga. App. 651, 652 (1) (662 SE2d 750) (2008).

[23] (Footnote omitted.) *Tran v. State*, 289 Ga. App. 89, 91 (3) (656 SE2d 229) (2008).

(f) Mora contends that trial counsel was ineffective in failing to call an employee of her office to testify that N. P. told her "it was not rape." Mora contends that the employee's testimony would have supported his defense that the sexual intercourse was consensual.

Contrary to Mora's contention, trial counsel did call her employee/assistant at trial. The assistant testified that N. P. and her sister came to counsel's office prior to trial and that N. P. stated that she wanted the charges against Mora dropped. The assistant further testified that she listened to Escamillo's interview of N. P., which was conducted in Spanish, and that N. P. told Escamillo that Mora "was bothering her"; N. P. did not use the Spanish word for "molest." To the extent trial counsel failed to illicit further testimony from her assistant favorable to Mora's defense, the assistant did not appear at the motion for new trial hearing and no proffer of her allegedly missing testimony was made at the hearing. "Absent a proffer of what [a] witness's testimony would have been at trial, an appellant cannot show that there is reasonable probability that the outcome of the trial would have been different had defense counsel taken the suggested course."[24] Accordingly, this claim fails.

(g) As Mora has failed to demonstrate any prejudice resulting from counsel's alleged errors, his reliance on *Schofield v. Holsey*[25] for the proposition that trial counsel's errors "cumulatively amount up to ineffective assistance of counsel"[26] is meritless.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

## DECIDED JANUARY 23, 2009.

*Louis M. Turchiarelli*, for appellant.
*Patrick H. Head, District Attorney, Maurice Brown, John R. Edwards, Assistant District Attorneys*, for appellee.

---

[24] (Footnote omitted.) *Bennett v. State*, 289 Ga. App. 110, 114-115 (3) (657 SE2d 6) (2008).
[25] 281 Ga. 809 (642 SE2d 56) (2007).
[26] Id. at 812 (II), n. 1 (the combined effects of counsel's errors should be considered together as one issue with regard to the prejudice test).