### A09A1281. COTTON v. THE STATE.
(686 SE2d 805)

SMITH, Presiding Judge.

Omali Cotton appeals from his convictions for possession of marijuana with the intent to distribute, obstruction of an officer,

---

[7] Id. at 719.

giving false information to a police officer, driving with a suspended license, and failing to use a turn signal. In his sole enumeration of error, Cotton contends insufficient evidence exists to support his felony conviction for possessing marijuana with the intent to distribute. We disagree and affirm.

Viewed in the light most favorable to the verdict, the record shows that in a search incident to Cotton's arrest for driving without a license, police officers found three identical small plastic "nickel bags" of marijuana and $60 (two $5 bills, one $10 bill, and two $20 bills) in the same pocket, as well as another identical small bag of marijuana on the ground near his feet. All of the marijuana in the four bags combined weighed 2.7 grams.

The officer who arrested Cotton testified that he spent a lot of time helping a canine officer with "drug enforcement." In his duties as a patrol officer, he would come into contact with drugs at least once a week. The officer testified that he suspected that Cotton was distributing marijuana because he was arrested in an area well-known for drug activity (Ridgecrest Apartments), he did not have a smoking device, he was driving a car that did not belong to him in an apartment complex in which he did not live, personal users normally have all of their marijuana in one bag instead of separate baggies, distributors sell marijuana in small bags like the ones found on Cotton for approximately $10-$20, and the denominations of the cash found in his pocket lent themselves to giving change. The combination of all these facts led the officer to believe that Cotton possessed marijuana with the intent to distribute. The officer acknowledged that his testimony was based upon his experience and information he learned from other officers and people he had previously arrested.

Another officer who assisted with the arrest testified that, based upon his experience patrolling apartments known for being a "high-drug area" where a lot of drugs are bought and sold, as well as his experience with street-level dealers, the drugs and money found on Cotton

> were consistent with a — basically a street level dealer. There were four bags of marijuana separately packaged. The money was in the same location that the drugs were found. There was no wallet. It was easy access for somebody to distribute and take money during a transaction. The . . . money was consistent with the amount of drugs that was on his person. . . .
>
> The amount of the bags was consistent with — like basically a dime bag or a $10 bag would be consistent with the amount of money that he had. He had four bags on him,

which isn't a lot of bags, but he had the corresponding money with that.

And my prior experience is if somebody's standing outside of an apartment or something along those lines, they're not going to keep, you know . . . they're not going to keep all 20, 30 on them. They're going to stash them either in a bush or inside an apartment or inside a car and keep them — you know, a minimum amount on their person. And then when they get low, they go back and restock, and then they sell what they have and they conduct business that way.

The officer also found it significant that Cotton did not have a pipe, rolling papers or other smoking device with him which "indicates he wasn't a user, that he was more of a distributor."

Cotton's girlfriend, who lived at Ridgecrest Apartments, testified that Cotton was unemployed at the time of his arrest, that he stayed with her the night before his arrest, that she gave him $80 the day before he was arrested, that he smoked marijuana every day in a blunt made from tobacco cigars, that it was not uncommon for Cotton to possess four $5 bags for his personal use, that he would obtain his marijuana somewhere within Ridgecrest Apartments, and that she had never known him to sell marijuana.

Cotton contends the evidence was insufficient to support a finding that he possessed the marijuana with the intent to distribute. While mere possession will not support a conviction for possession with intent to distribute, the evidence submitted by the State in this case adequately supports Cotton's conviction.

"No bright line rule exists regarding the amount or type of evidence sufficient to support a conviction for possession with intent to distribute." (Citation and footnote omitted.) *Harper v. State*, 285 Ga. App. 261, 265 (1) (b) (645 SE2d 741) (2007). We have previously held that possession of four individual packages of crack cocaine provided sufficient evidence of intent to distribute. *Bowers v. State*, 195 Ga. App. 522 (1) (394 SE2d 141) (1990). In this case, the State also submitted unobjected-to opinion testimony by both officers that the packaging of the marijuana in combination with the denominations of cash found together in Cotton's pants pocket, as well as the absence of a smoking device, demonstrated an intent to distribute. We find this evidence sufficient to support Cotton's intent to distribute conviction. See id.; *Helton v. State*, 271 Ga. App. 272, 275 (b) (609 SE2d 200) (2005) (possession of four small bags of methamphetamine, large amount of cash, and expert testimony sufficient to support intent to distribute conviction); *Maddox v. State*, 227 Ga. App. 602, 603 (1) (490 SE2d 174) (1997) (possession of four small bags and other evidence sufficient to support intent to distribute

conviction). Compare *Hicks v. State*, 293 Ga. App. 830, 831-833 (668 SE2d 474) (2008) (single pill bottle containing multiple pieces of cocaine insufficient to support intent to distribute conviction); *Florence v. State*, 282 Ga. App. 31, 33-34 (1) (c) (637 SE2d 779) (2006) (single baggie containing one crack cocaine "cookie" that could have been broken into smaller pieces and expert testimony assuming "cookie" was not for personal use insufficient to support intent to distribute conviction).

We find no merit in Cotton's claim that the expert testimony by the officers cannot be considered when weighing the sufficiency of the evidence because the State allegedly failed to present an adequate foundation for their expert testimony.

> The requirements for qualification as an expert witness are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science, or profession. Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience.

(Citations omitted.) *In the Interest of C. W. D.*, 232 Ga. App. 200, 206 (3) (a) (501 SE2d 232) (1998). See also *Lindley v. State*, 225 Ga. App. 338, 340 (1) (484 SE2d 33) (1997) (Expert's "special knowledge in regard to a particular subject may be derived from experience as well as study and direct mental application. [Cits.]"); compare *McNair v. State*, 226 Ga. App. 516, 517 (1) (487 SE2d 100) (1997) (State failed to elicit "*any* background information from the officer from which a jury could infer his expertise and special knowledge on this issue. [Cit.]") (emphasis supplied). Because the State elicited adequate background information from the officers in this case about their experience with street-level dealers, their testimony can be used to support Cotton's conviction. See *Hight v. State*, 293 Ga. App. 254, 257 (3) (666 SE2d 678) (2008).

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED NOVEMBER 10, 2009.

*Stephen J. Lichtenstein*, for appellant.
*Lee Darragh, District Attorney*, for appellee.