### A09A1854. WILLIAMS v. THE STATE.
(692 SE2d 820)

BERNES, Judge.

A jury found Tara Williams guilty of possession of marijuana with intent to distribute and drug trafficking within 1,000 feet of public housing. Williams filed a motion for new trial, which the trial court denied. On appeal, Williams challenges the sufficiency of the evidence to sustain her convictions. She further contends that the trial court erred (1) in denying her motion to suppress the drug evidence; (2) in denying her the right to impeach an officer with evidence of his alleged racial bias in prior unrelated cases; (3) in denying a new trial based upon the state's alleged failure to produce exculpatory fingerprint evidence during discovery; (4) in denying her motion for a mistrial based upon the state's violation of the trial court's ruling excluding the contents of a letter used to refresh a witness's recollection; (5) in denying a new trial based upon the

---

[23] (Citation omitted.) *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 589 (3) (452 SE2d 159) (1994).

prosecutor's misstatement of the evidence during closing argument; and (6) in improperly commenting upon the evidence at trial. Because the evidence was insufficient to establish that Williams's residence was located in a publicly owned or operated housing project, we must reverse the drug trafficking conviction. As to the possession of marijuana with intent to distribute conviction and the remaining claims of error, however, we affirm. Accordingly, the judgment of conviction is affirmed in part and reversed in part.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation omitted.) *Clyde v. State*, 298 Ga. App. 283 (680 SE2d 146) (2009). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence presented at trial established that on December 6, 2005, officers with the Dublin Police Department obtained and executed a search warrant for Williams's residence. When the officers arrived at the residence, Williams was wearing a tan jacket and sitting outside on the porch. When the officers approached, Williams fled, crawling "very rapidly" inside the residence. The officers pursued Williams through the front door. After the officers entered the residence, Williams came out of the closet area located directly behind the front door. The officers performed a pat-down search of Williams for weapons, conducted a safety search to ensure that no other adults were present, and then searched the residence.

During a search of the closet behind the front door, the officers discovered a box covered by the jacket that Williams had been wearing. The officers discovered and seized 18 individual baggies of marijuana from inside the box. In Williams's kitchen and between the mattresses in her bedroom, the officers also discovered several small baggies, commonly used to package marijuana and of the same type discovered in the box. The officers testified that the manner in which the drugs were packaged was indicative of drug sales and distribution.

Williams was subsequently arrested, charged, and convicted of possession of marijuana with intent to distribute, in violation of OCGA § 16-13-30 (j) (1), and drug trafficking within 1,000 feet of public housing, in violation of OCGA § 16-13-32.5 (b).

1. Williams challenges the sufficiency of the evidence as to the drug trafficking offense. She contends that the trial evidence failed to establish that her residence, where the offense occurred, was within 1,000 feet of a publicly owned and operated housing project, as alleged in the indictment. We agree.

> OCGA § 16-13-32.5 (b) makes it unlawful for any person to manufacture, distribute, dispense, or possess with intent to distribute a controlled substance or marijuana or a counterfeit substance in, on, or within 1,000 feet of any real property of any publicly owned or publicly operated housing project. For the purposes of this Code section, the term "housing project" means any facilities under the jurisdiction of a housing authority which constitute single or multifamily dwelling units occupied by low and moderate-income families pursuant to Chapter 13 of Title 8.

(Punctuation and footnote omitted.) *Mahone v. State*, 296 Ga. App. 373, 374-375 (3) (674 SE2d 411) (2009). While the indictment pertinently charged that Williams had committed the drug offense within 1,000 feet of a "publicly owned and operated housing project, to wit: the Housing Authority of the City of Dublin, Georgia," the state failed to produce any evidence establishing the same. The state's witnesses testified that Williams's residence was located in a housing project, commonly known as Jones Village, and made reference that there were multiple apartments at the location. Significantly, however, there was no evidence establishing that the housing project was publicly owned or operated. Nor was there testimony that the housing project was occupied by low and moderate-income families. Accordingly, the state failed to establish that Williams's residence fell within the purview of the statute proscribing this offense. As a result, the drug trafficking conviction premised upon OCGA § 16-13-32.5 (b) must be reversed. See *Mahone*, 296 Ga. App. at 374-376 (3); *Collins v. State*, 278 Ga. App. 103, 105-106 (1) (b) (628 SE2d 148) (2006); *Johnson v. State*, 214 Ga. App. 77, 79-81 (2) (447 SE2d 74) (1994). Compare *Barnett v. State*, 276 Ga. App. 238, 240 (1) (623 SE2d 136) (2005) (offense established by testimony that the housing authority owned the apartments where the drug transaction occurred and that families of lower income lived there); *Haywood v. State*, 248 Ga. App. 210, 212 (2) (546 SE2d 325) (2001) (offense established by testimony that the drug crime occurred at a publicly operated low to moderate-income housing project run by the housing authority).

2. Williams also contends that the evidence was insufficient to establish her commission of the possession of marijuana with intent to distribute offense. This contention is without merit.

"It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." OCGA § 16-13-30 (j) (1). There is no bright line rule regarding the amount or type of evidence sufficient to support a conviction for possession with intent

to distribute. See *Cotton v. State*, 300 Ga. App. 874, 876 (686 SE2d 805) (2009). We have previously held that an intent to distribute may be demonstrated by the manner in which the drugs were packaged. Id.; *Bowers v. State*, 195 Ga. App. 522 (1) (394 SE2d 141) (1990). Here, the evidence established that during the execution of the search warrant at Williams's residence, the officers seized 18 baggies of marijuana individually packaged in a manner that was indicative of possession with intent to distribute. This evidence was sufficient to support Williams's conviction. See id.

Williams nevertheless argues that she did not have actual possession of the contraband, that she was merely present at the scene, and that others had equal access to her residence where the contraband was found. In support of her argument, Williams points to evidence that her ex-boyfriend had a key to her residence and lived with her occasionally, that others visited her residence, and that her fingerprints were not discovered on the drugs. Williams's contentions in this regard, however, merely presented a question of equal access and control, which the jury was required to resolve:

> [A] person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. To prove constructive possession, the [s]tate must establish a link between the defendant and the contraband that goes beyond mere spatial proximity. Such connection can be made where the evidence shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. Control may be inferred if the defendant owns or resides in the premises, but not if he is merely an occupant. . . . To rebut the inference of possession, . . . a defendant must present evidence that a person other than the defendant had equal access to the premises where the contraband was found. And whether the defendant's evidence of equal access sufficiently rebuts the inference is a question for the jury.

(Punctuation and footnotes omitted.) *Bussey v. State*, 263 Ga. App. 56, 57-58 (1) (a) (587 SE2d 134) (2003).

Here, the evidence reflected that the residence belonged to Williams, thus permitting an inference that she controlled the premises and was in constructive possession of the drug contraband. See *Bussey*, 263 Ga. App. at 58 (1) (a). Although Williams's ex-boyfriend testified that he occasionally lived at the residence with Williams, he was not present when the search warrant was executed.

And significantly, he denied knowing anything about the drugs, denied that the drugs belonged to him, and stated that he never saw anyone store drugs in Williams's closet. None of Williams's other visitors had a key to the residence. While test results indicated that Williams's fingerprints were not located on the drug evidence, the evidence further reflected that some of the fingerprints could not be processed. Regardless, the absence of Williams's fingerprints did not require an acquittal. "The fact that there is a fingerprint at a crime scene which does not belong to the accused is neither exculpatory nor inculpatory." *Batton v. State*, 260 Ga. 127, 131 (4) (391 SE2d 914) (1990); *Coney v. State*, 209 Ga. App. 9, 12 (3) (432 SE2d 812) (1993).

Moreover, the evidence showed that when the officers approached the residence, Williams fled inside to the closet area where the drugs were later located. When the officers searched the closet, they discovered that the jacket Williams had been wearing was placed over the box containing the drugs. This circumstantial evidence implied Williams's consciousness of guilt and further supported the conviction. See *Clyde*, 298 Ga. App. at 285 (1); *Bussey*, 263 Ga. App. at 58 (1) (a).

Based upon the totality of the evidence, the jury was authorized to conclude that Williams had committed possession of marijuana with intent to distribute. See *Cotton*, 300 Ga. App. at 876-877; *Clyde*, 298 Ga. App. at 285 (1); *Bussey*, 263 Ga. App. at 58-59 (1) (a); *Bowers*, 195 Ga. App. at 522 (1).

3. Williams further contends that the trial court erred in denying her motion to suppress the drug evidence, arguing that the evidence was insufficient to establish probable cause for the issuance of the search warrant. Again, we discern no error.

> In determining whether probable cause exists for the issuance of a search warrant, the magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. This Court's review of the magistrate's decision is limited to determining if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. Substantial deference is afforded to a magistrate's decision to issue a search warrant based on a finding of probable cause. And a presumption of validity attaches to an affidavit supporting a search warrant. Further, doubtful cases should be resolved in favor of upholding search warrants. Finally, we review the contents

of the affidavit in the light most favorable to uphold the ruling of the trial court.

(Citations and punctuation omitted.) *Chambliss v. State*, 298 Ga. App. 293, 294 (1) (679 SE2d 831) (2009).

The search warrant in this case was supported by the investigating officer's affidavit, which pertinently provided as follows:

[I] [have] been employed with the City of Dublin Police Department for ten years and [have] conducted, assisted, or been involved in investigating cases involving illegal drugs. [I] [have] recieved [sic] numerous complaints about illegal drugs being sold out of [Williams's] residence. [I] had a reliable confidential informant see [Williams] with a large amount of marijuana in the residence on December 6, 2005. The informant has worked with me in the past and has been instrumental in numerous arrests and convictions[.] [I] request[ ] a no knock warrant because illegal drugs are easily disposed of.

At the suppression hearing, the investigating officer testified as to this same information provided in the affidavit. In addition, the officer testified that he had known the informant for 11 or 12 years, he had used the informant in at least 20 to 30 prior investigations, and he had provided the magistrate with information about the informant's prior work with the other officers and the Georgia Bureau of Investigation ("GBI") beyond what was set forth in the affidavit. The officer, however, did not inform the magistrate that the informant had a prior criminal history and had been paid for tips in the past. The officer stated that the informant was not paid for the information provided in the instant case.

The foregoing evidence established the existence of probable cause for the issuance of the search warrant. See *Rocha v. State*, 284 Ga. App. 852, 853-854 (644 SE2d 921) (2007); *Copeland v. State*, 273 Ga. App. 850, 850-852 (1) (616 SE2d 189) (2005); *Sanders v. State*, 252 Ga. App. 609, 609-611 (1) (556 SE2d 505) (2001); *Crawford v. State*, 233 Ga. App. 323, 326-327 (4) (504 SE2d 19) (1998). Williams nevertheless contends that probable cause was lacking since the officer failed to corroborate the informant's tip and failed to apprise the magistrate of the informant's prior criminal and payment histories, information which affected his credibility.[1] Her contentions are without merit.

---

[1] Williams also claims that the no-knock provision of the search warrant was not supported by probable cause. But, because she failed to invoke a ruling on this issue from the

> [T]he sufficiency of information obtained from an informant is not to be judged by any rigid test. Generally, probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

(Citation and punctuation omitted.) *Rocha*, 284 Ga. App. at 853. Here, the basis of the informant's knowledge was his personal observation of the marijuana at Williams's residence. Moreover, the informant's reliability was sufficiently established by evidence that he had been known by the investigating officer for 11 or 12 years and he had been instrumental in obtaining arrests and convictions in numerous prior cases. "Under a 'totality of the circumstances' approach, corroboration simply supplies an alternative basis for finding probable cause, where there are deficiencies in the showing of the informant's veracity, reliability, or basis of knowledge." (Citation and punctuation omitted.) *Sanders*, 252 Ga. App. at 612 (1); *Crawford*, 233 Ga. App. at 327 (4). Where, as here, the informant's basis of knowledge and reliability were sufficiently established, corroboration is not required. Id. And, while the better practice would have been for the officer to include all information relating to the informant's reliability, his failure to provide the informant's prior criminal history and payment history in this case did not invalidate the warrant in light of the other indicia of the informant's reliability. See *Zorn v. State*, 291 Ga. App. 613, 614-615 (1) (662 SE2d 370) (2008); *Carlton v. State*, 251 Ga. App. 339, 341-342 (2) (554 SE2d 318) (2001).

4. Williams next argues that the trial court improperly restricted her examination of an officer regarding his alleged racial bias. At trial, Williams's counsel attempted to question the officer as to racist statements that he had allegedly made in prior unrelated cases. The state objected to Williams's line of questioning on the ground that it constituted an improper method of impeachment. The trial court overruled the state's objection, in part, and allowed Williams to question the officer regarding his alleged racial bias to the extent that such evidence bore upon his credibility in this case. The trial court noted, however, that alleged misconduct from the officer's personnel file was over 15 years old, and ruled that the questioning

---

trial court, her claim has been waived for purposes of appeal. See *Bond v. State*, 271 Ga. App. 849, 851-852 (1) (610 SE2d 609) (2005); *Delong v. State*, 185 Ga. App. 314 (363 SE2d 811) (1987).

would be limited to more recent cases. Williams's counsel was then allowed a brief recess to obtain court transcripts and a witness that she claimed was available in support of her impeachment claim. When the trial resumed, however, Williams failed to present any impeachment evidence. In response to Williams's counsel's questioning, the officer denied that he had ever used any racial slurs during the course of his duties as a police officer.

"The trial court has broad discretion in determining the scope and extent of cross-examination; absent a clear abuse of such discretion, the action of the trial court will not be disturbed." *Farley v. State*, 225 Ga. App. 687, 694-695 (484 SE2d 711) (1997) (physical precedent only). See also *Perkins v. State*, 288 Ga. App. 802, 803 (655 SE2d 677) (2007); *Shropshire v. State*, 210 Ga. App. 241, 242 (1) (435 SE2d 700) (1993). In this case, no abuse of the trial court's discretion has been shown.

It is true that "[t]he state of a witness's feelings toward the parties . . . may always be proved for the consideration of the jury." OCGA § 24-9-68. The credibility of a witness may be attacked by "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they relate *directly* to issues or personalities in the case." (Citation omitted; emphasis in original.) *Farley*, 225 Ga. App. at 690. But, the scope of cross-examination is not unlimited. "[T]he trial court has broad discretion to exclude evidence on grounds of relevancy, . . . [and] if the proffered evidence is too tenuous to prove the desired matter and is possibly more prejudicial than probative, the trial court does not abuse its discretion in excluding the evidence." *Baker v. State*, 254 Ga. App. 19, 20-21 (2) (561 SE2d 185) (2002).

Here, Williams had an opportunity to develop the testimony regarding the officer's alleged racial bias, but she failed to do so. And, to the extent that Williams's enumeration is premised upon evidence reflected in the officer's personnel file, she has failed to perfect the record with a sufficient proffer of the excluded evidence. Although the officer's personnel file was presented to the trial court for consideration, such evidence was not introduced and included in the record for appellate review. In the absence of the evidence, we cannot reach the merits of the claim. See *French v. State*, 288 Ga. App. 775, 777 (3) (655 SE2d 224) (2007).

> Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort so that both the trial court and the appellate court can know whether the evidence really exists. In the absence of such a proffer, the

assignment of error is so incomplete as to preclude its consideration by this court.

(Citation omitted.) *State v. Winther*, 282 Ga. App. 289, 291 (638 SE2d 428) (2006). See also *French*, 288 Ga. App. at 777 (3).

5. Williams also claims that she was entitled to a new trial based upon the state's failure to produce exculpatory fingerprint evidence during discovery. During the course of trial, the state informed Williams and the trial court that it had been informed of the existence of fingerprint evidence and test results indicating that the fingerprints did not match those belonging to Williams. Williams did not seek a mistrial; rather, she requested and was afforded the opportunity to review the test results. Pursuant to the parties' stipulation, the fingerprint evidence was presented to the jury for their consideration through the testimony of a GBI assistant special agent.

Although the fingerprint evidence should have been furnished to Williams under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), Williams failed to show that she suffered any cognizable harm from the alleged discovery violation since the evidence was introduced at trial for the jury to consider and weigh. See *Satterfield v. State*, 256 Ga. 593, 599-600 (10) (351 SE2d 625) (1987); *Jones v. State*, 276 Ga. App. 728, 730-731 (624 SE2d 275) (2005); *Wright v. State*, 220 Ga. App. 233, 234-235 (3) (469 SE2d 381) (1996).

6. Williams contends that the trial court erred in denying her motion for a mistrial based upon the state's violation of an evidentiary ruling. During examination of a witness at trial, the state referred to a letter from the district attorney's office requesting that the marijuana be tested. Williams objected to the introduction of the letter on the ground that it had not been divulged to the defense during discovery. The trial court ruled that the letter could be used to refresh the witness's recollection regarding the testing of the marijuana, but its contents could not be introduced into evidence. When the state resumed its examination, the witness was asked, "[D]o you recall getting a letter from the D.A.'s office dated May 23, 2006, that —" Williams interrupted the questioning by objecting and requested a mistrial, contending that the state had gone into the contents of the letter in violation of the trial court's ruling. The trial court denied Williams's motion for mistrial, but sustained the objection and gave the jury curative instructions to disregard the testimony regarding the letter.

Pretermitting whether the state had indeed violated the trial court's order by referencing the date of the letter, no harm from the error has been shown. "Not only error but prejudice flowing there-

from must be shown in order to warrant a reversal of judgment." *Collins v. State*, 164 Ga. App. 482, 483 (2) (297 SE2d 503) (1982). In light of the trial court's curative instructions and the totality of the evidence presented at trial, any error was rendered harmless. See *Samples v. State*, 227 Ga. App. 596, 597 (1) (490 SE2d 172) (1997).

7. Williams further argues that she was entitled to the grant of a new trial based upon the prosecutor's misstatement of the evidence during closing arguments. In this regard, Williams complains about the prosecutor's argument that "[Williams] had a little bit on her, out on the porch," speculating that Williams may have had actual possession of some of the marijuana before she fled into the residence. Williams objected to the remark on the ground that it was not supported nor inferred by the evidence. The trial court addressed the objection by stating, "that is a fact that the jury will have to recall or not recall[.] . . . I don't recall . . . whether it was or was not [presented in the evidence]." When the state thereafter conceded that the remark was not based upon the trial evidence, the trial court responded, "Very well." The prosecutor moved forward with his closing argument. Williams did not seek a ruling on her objection nor any court action to remedy the alleged error.

> When improper argument is made to the jury, it is necessary, in order to make the alleged error the basis for appeal, that opposing counsel, during the trial, properly object to the argument, invoke the ruling or instruction of the court, and if dissatisfied with the action taken to renew the objection and move for mistrial. Since this procedure was not followed by [Williams] in response to . . . the comment[ ] at issue, th[is] enumeration[ ] of error present[s] nothing for review.

(Citation and punctuation omitted.) *Holsey v. State*, 199 Ga. App. 782, 784 (6) (406 SE2d 127) (1991).

8. Lastly, Williams contends that the trial court improperly commented upon the evidence at trial. During closing argument, Williams's counsel remarked that when the officers arrived, Williams ran inside the residence to protect her child, who had been left alone in the living room. The state objected, contending that the argument was based upon facts not in evidence. In ruling upon the objection, the trial court stated:

> That is a fact that the jury will have to recall if they've heard that from the evidence. . . . Of course, that is the gamble that you take when you make such an argument, that they do, in fact, recall. I don't recall it, . . . but that's

> not to say it was not offered in evidence. . . . I will allow you to pursue that argument, though.

Williams's counsel then continued with her argument, without interposing any objection to the trial court's comments.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. The plain error rule applies to violations of this provision. See *Paul v. State*, 272 Ga. 845, 848-849 (3) (537 SE2d 58) (2000); *Hunt v. State*, 247 Ga. App. 464, 468 (5) (542 SE2d 591) (2000). But, here, the trial court's statements were clearly intended to explain its ruling on the objection. "A trial judge's explanation for a ruling on an objection neither constitutes an expression of opinion nor amounts to a comment on the evidence." (Citation omitted.) *Martinez v. State*, 259 Ga. App. 402, 406 (4) (b) (577 SE2d 82) (2003); *Norris v. State*, 240 Ga. App. 231, 232 (523 SE2d 80) (1999). See also *Richards v. State*, 232 Ga. App. 584, 587 (2) (502 SE2d 519) (1998) ("Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.") (citation and punctuation omitted). Accordingly, we discern no error.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 29, 2010.

*Rachel D. Caputo, Leonard M. Geldon*, for appellant.
*Louie C. Fraser, District Attorney, Robert B. Faircloth, Assistant District Attorney*, for appellee.