## A01A1046. GLENN v. THE STATE.
(553 SE2d 323)

BLACKBURN, Chief Judge.

Following a jury trial, James Glenn appeals his conviction for possession of cocaine with intent to distribute, contending that the trial court erred by denying his motion for directed verdict and that the evidence was insufficient to support the jury verdict. For the reasons set forth below, we affirm.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1]

(Citation and punctuation omitted.) *Yarbrough v. State*.[2]

Viewing the evidence in this light, the record reveals that in the afternoon of April 15, 1999, Lynn Archer visited the apartment where his daughter, Tammy Kivett, resided.[3] Archer knocked on the door and heard an unknown person say that "they was in the tub." Archer left at that time but returned to the apartment at 8:30 p.m. He entered the apartment and found Glenn and Lynn C. Washington inside.[4] Archer told Glenn and Washington that they had no business being in the apartment. Archer then left and called his daughter to inform her that Glenn and Washington were in the apartment.

Not knowing either individual in her apartment, Tammy Kivett called the police, and two deputies arrived at the apartment after midnight. With Ms. Kivett's permission to enter the apartment, the deputies walked toward the doorway. Before the deputies had a chance to knock, however, Glenn opened the door. Glenn let the deputies enter the apartment, wherein they also found Washington and Shari Denise Floyd.[5]

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Yarbrough v. State*, 241 Ga. App. 777, 780-781 (4) (527 SE2d 628) (2000).

[3] At the time, however, Tammy Kivett had been temporarily living at another location with her husband, Virgil Kivett.

[4] Co-defendant Lynn C. Washington appeals her conviction separately and is not a party to this appeal.

[5] Co-defendants Shari Denise Floyd, Lisa Ann Brady, and Mark Q. Carter are not parties to this appeal.

The layout of the apartment was described as an "open floor plan." The apartment doorway opened up into the living room area, which was open and adjoined the dining room. From the living room, one could also look through an archway into the kitchen. Washington was in the kitchen area, and Floyd was sitting on or by the couch in the living room.

On the dining room table, in plain view, one deputy observed what appeared to be a crack cocaine smoking device with a rubber base that had residue on it. Upon further investigation, more than 12 grams of cocaine as well as several items of drug paraphernalia were found scattered throughout the apartment as follows: cocaine rocks, a smoking device, scorched spoons, and a razor blade on the bottom of the kitchen sink; scorched spoons on the kitchen counter; a crack cocaine smoking device on the dining room table, in plain view; a light bulb that had been converted into a smoking device inside a "pumpkin" container in the bedroom closet; razor blades with residue on a shelf in the bedroom; razor blades with suspected cocaine residue, a copper-style scouring pad, and a plastic bag either in a drawer or on top of a small table located in the dining room area; a bag containing cocaine in the back of the toilet in the bathroom; and a syringe filled with liquid cocaine in a box behind the living room couch. In the bedroom, the investigators also found a black bag containing clothing. Glenn identified the bag as belonging to him.

Glenn was arrested for burglary and possession of cocaine with the intent to distribute. At the time of his arrest, Glenn told the police officers that he had been in the apartment with the permission of Tammy Kivett's brother, Dale Archer. Although acquitted on the charge of burglary, the jury found Glenn guilty of possession of cocaine with the intent to distribute.

1. Glenn argues that there was no circumstantial evidence tying him to contraband other than his "mere presence at the crime scene, his spatial proximity to the drugs, and his mere association with other persons similarly located."

> Possession may be joint or exclusive, and actual or constructive. Such evidence would authorize a finding that [Glenn, Washington, and Floyd] had equal access to the cocaine and were in joint constructive possession of the drug. By showing circumstantially that the [other defendants] had equal access to the cocaine, the evidence established that [Glenn, Washington, and Floyd] were parties to the crime, and thus, guilty of joint constructive possession of the cocaine. Such

evidence is sufficient to meet the standard of proof required by *Jackson v. Virginia*, supra.

(Citations and punctuation omitted.) *Reed v. State*.[6] See also *Lowe v. State*.[7]

The evidence here demonstrated a connection between Glenn and the contraband that went beyond mere spatial proximity. Glenn had been in the apartment since at least 8:30 p.m. and was there when the police arrived after midnight. No evidence was presented that Glenn left the apartment or the apartment area at any time between 8:30 p.m. and midnight.[8] Therefore, a jury could infer that he had been in the apartment where the cocaine and paraphernalia were found for at least three and one-half hours before his arrest. Furthermore, Glenn stated that he was in the apartment with the permission of Tammy Kivett's brother. There was no evidence of the presence of Ms. Kivett nor her brother at any time during Glenn's stay. As Glenn opened the door upon the officer's arrival, a jury could reasonably infer that Glenn not only had free access to the entire apartment, but indeed had control over the premises.

Moreover, the evidence connected Glenn to the specific rooms where the cocaine was found. Upon opening the door, Glenn was in an area near the couch, where the syringe of liquid cocaine was found, and where he could clearly view the cocaine smoking device in the center of the dining room table. In addition, Glenn's bag of clothing was found in the bedroom, where some of the drug paraphernalia and suspected residue were found. There was also evidence to indicate that Glenn may have been "in the tub" earlier in the day, in the bathroom where the largest chunk of cocaine was found. Finally, the living room and dining room areas were within sight of and access to the kitchen area, where additional cocaine particles were found.[9] Viewed in the light most favorable to the verdict, the jury could properly infer that Glenn was in joint constructive possession of the cocaine.

2. Glenn also argues that the evidence was insufficient to show an intent to distribute. Although mere possession of cocaine cannot serve as the basis for a conviction for intent to distribute, the intent

---

[6] *Reed v. State*, 244 Ga. App. 146-147 (534 SE2d 871) (2000).

[7] *Lowe v. State*, 223 Ga. App. 172, 173 (477 SE2d 341) (1996).

[8] There was evidence that minutes before the police arrived, Washington was standing on the apartment balcony having an argument with others who were in the driveway.

[9] Although Glenn argues that the particles found in the kitchen sink were never tested, the particles were included as a part of the State's Exhibit 6 at trial. It is undisputed that portions of Exhibit 6 tested positive for cocaine. Furthermore, Glenn stipulated to the admission of Exhibit 6 in its entirety, as well as the lab findings that Exhibit 6 tested positive for cocaine.

can be established with expert testimony that the amount of cocaine found was greater than would normally be had for individual use. See *Bacon v. State*;[10] *Bean v. State*.[11] Furthermore, a large amount of cocaine can be considered, in and of itself, evidence of intent to distribute. *Bacon v. State,* supra at 328.

At trial, a Georgia Peace Officer Standards & Training-certified narcotics investigator with six years experience in law enforcement testified that the cocaine found on the premises had an approximate street value of $2,500, which was "not usually a user amount of cocaine." In fact, with a $20 rock or two constituting a user amount, the investigator agreed that the cocaine found constituted a "sizeable number of individual user amounts of crack cocaine." Sufficient evidence was presented for the jury to find Glenn guilty of possession of cocaine with the intent to distribute, beyond a reasonable doubt.

Accordingly, we affirm the judgment and the denial of a directed verdict.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED AUGUST 1, 2001 —
RECONSIDERATION DENIED AUGUST 23, 2001.

*Christopher G. Paul,* for appellant.

*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellee.

---

[10] *Bacon v. State*, 225 Ga. App. 326, 327 (483 SE2d 894) (1997).
[11] *Bean v. State*, 204 Ga. App. 242, 243 (2) (418 SE2d 798) (1992).