## A03A1101. BUSSEY v. THE STATE.
### (587 SE2d 134)

RUFFIN, Presiding Judge.

An Upson County jury found Faron Bussey guilty of one count of possession of marijuana with intent to distribute.[1] On appeal, he challenges the sufficiency of the evidence. He also argues that the trial court erred in failing to grant a mistrial after a witness gave hearsay testimony and in refusing to suppress evidence. For reasons that follow, we affirm.

Following his conviction at trial, Bussey no longer enjoys a presumption of innocence, and we review the evidence on appeal in the light most favorable to the jury's verdict.[2] We neither weigh the evidence nor determine witness credibility, but only assess whether the evidence was sufficient to find Bussey guilty beyond a reasonable doubt.[3]

Viewed in this light, the evidence shows that, on October 18, 2001, the Narcotics Task Force executed a search warrant on a house rented by Kenneth Jordan. When the police arrived at the house, they arrested two men outside, one of whom was carrying a marijuana cigarette and a bag of loose marijuana. Both men testified that they had not been inside the house.

Upon entering the residence, Agent Jonathan Hemphill saw Bussey and Curtis Middlebrooks running from the kitchen to the bedroom, where they were arrested. During the search, the task force found a beer can containing cocaine residue and three bags of marijuana on top of the refrigerator. Two of the bags contained loose marijuana, and the third bag held marijuana packaged in small green and red bags. In one of the bedrooms, the task force discovered more empty green and red bags, including a red bag with marijuana residue. Agent Hemphill testified that he believed these bags were found in Jordan's bedroom.

Middlebrooks pled guilty to possessing cocaine and marijuana. At Bussey's trial, he claimed ownership of the marijuana individually wrapped in green and red bags, but denied knowledge of the other

---

[1] The jury acquitted Bussey of possession of cocaine.

[2] See *Swanger v. State*, 251 Ga. App. 182 (554 SE2d 207) (2001).

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Swanger*, supra.

marijuana discovered on the refrigerator. Middlebrooks stated that when he saw the police arrive, he "just told [Bussey] the Force was out there and both of [them] took off running." According to Middlebrooks, he ran because he had drugs on his person. Middlebrooks explained that "[he] and Faron Bussey went to the refrigerator," where he hid his drugs before they both fled to the bedroom. The two men arrested outside testified that they had no knowledge of the drugs inside the house, although one of them, Ron Ellerbee, admitted telling Hemphill that the drugs belonged to Middlebrooks and Bussey.

Jordan, the man renting the house, also testified that he had no knowledge of the drugs. At the time, Jordan spent most nights at his girlfriend's house, but returned home every couple of days "to check . . . on things." Jordan further testified that he allowed Bussey to live in the house, but the evidence regarding those living arrangements was in conflict. At one point, Jordan stated that Bussey was not living at the house the day of the search, though Bussey had stayed there the night before. He also admitted telling Hemphill that Bussey lived with him during the month of October 2001. In addition, the evidence shows that Bussey had personal effects in the house, including clothes.

During his testimony, Agent Hemphill held up all three packages of marijuana, including the bag Middlebrooks claimed, and testified that the total amount found was "almost three ounces," which was a "significant quantity for a person that would just smoke marijuana." He also testified that the packaging of the individually wrapped marijuana was consistent with distribution. Based on this evidence, the jury found Bussey guilty of possessing marijuana with the intent to distribute.

1. On appeal, Bussey claims that the evidence was insufficient to support his conviction. We disagree.

(a) According to Bussey, the evidence shows that he was merely present at the scene, which is insufficient to establish guilt. We agree that little direct evidence linked Bussey to the loose marijuana. But a conviction may be based on circumstantial evidence as long as the proven facts are consistent with guilt and exclude all other reasonable hypotheses.[4] The reasonableness of a hypothesis is generally a matter for the jury.[5]

Furthermore, "[a] person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive pos-

---

[4] See *Johnson v. State*, 245 Ga. App. 583, 585 (538 SE2d 481) (2000).
[5] See *Horner v. State*, 257 Ga. App. 12, 17-18 (5) (570 SE2d 94) (2002).

session of it."[6] To prove constructive possession, the State must establish a link between the defendant and the contraband that goes beyond mere spatial proximity.[7] Such connection can be made where the evidence "shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others."[8] Control may be inferred if the defendant owns or resides in the premises, but not if he is merely an occupant.[9]

While Bussey was not the owner of the home, the State presented sufficient evidence from which the jury could find that he was a resident, thus permitting an inference that he controlled the premises. Jordan admittedly told Agent Hemphill that Bussey lived at the house during the month of October. Agent Hemphill also testified that, in a statement to police, Jordan reported that Bussey had been living at the house "for awhile" at the time of the search. Both Jordan and Hemphill indicated that Bussey had personal items at the house. And Jordan's testimony that he only visited the house every few days allowed the jury to infer that, at times, Bussey lived in the house by himself and had sole control over the premises.

Arguably, other individuals, namely Jordan and Middlebrooks, also had access to the marijuana. To rebut the inference of possession, however, a defendant must present evidence "that a person other than the defendant had equal access to the premises where the contraband was found."[10] And whether the defendant's evidence of equal access sufficiently rebuts the inference is a question for the jury.[11]

Even assuming the access enjoyed by Jordan and Middlebrooks was equal to Bussey's, the evidence authorized the jury to conclude that Bussey failed to rebut the inference of possession.[12] Jordan testified that none of the drugs in the house belonged to him. Similarly, although Middlebrooks claimed the individually wrapped drugs, he denied knowledge of the loose marijuana found on the refrigerator. Thus, the two other people with access to the house denied knowledge of the loose marijuana. The evidence also shows that Bussey fled from the officers when they entered the house, which is "circumstantial evidence of consciousness of guilt."[13] Finally, Ellerbee told

---

[6] *Addison v. State*, 254 Ga. App. 347, 349 (3) (564 SE2d 204) (2002).

[7] See *Johnson*, supra at 584.

[8] Id. at 584-585.

[9] See id. at 585.

[10] *Swanger*, supra at 185 (1) (b).

[11] See *Turner v. State*, 247 Ga. App. 775, 776 (1) (544 SE2d 765) (2001).

[12] Compare *Mathis v. State*, 204 Ga. App. 896, 897 (1) (420 SE2d 788) (1992) ("The equal access rule is not properly invoked in regard to persons who are merely visiting.").

[13] (Punctuation omitted.) *Gresham v. State*, 255 Ga. App. 625, 629 (3) (566 SE2d 380) (2002).

Agent Hemphill that the drugs in the house belonged to Middlebrooks and Bussey, providing a direct link between Bussey and the drugs. Based on this evidence, the jury could reasonably conclude that Bussey possessed the bags of loose marijuana.[14]

(b) Bussey further argues that the State failed to prove intent to distribute. Mere possession of marijuana does not prove such intent.[15] Generally, however, the issue of intent "is peculiarly a question of fact for determination by the jury."[16]

In this case, Agent Hemphill testified that the amount of marijuana found was "a significant quantity" for personal use.[17] He further stated that the packaging of Middlebrooks' marijuana was consistent with distribution. And although his statement regarding the total amount found included the bag claimed by Middlebrooks, Agent Hemphill showed the jury all three bags. Jurors thus were allowed to compare the drugs packaged for distribution to the loose marijuana and conclude that the amount of loose marijuana was more than someone would possess for personal use.[18] We agree with Bussey that the evidence of intent to distribute was not particularly strong, but the jury's factual finding that Bussey had the requisite intent was not contrary to the evidence, and thus we will not disturb that finding on appeal.[19]

2. Bussey contends that the trial court erred in refusing to grant a mistrial after Agent Hemphill gave inadmissible hearsay testimony. Hemphill testified that an informant had advised the task force that Bussey "had been selling dope out of the house." Bussey immediately objected and moved for a mistrial. The court denied the motion, but instructed the jury to disregard Hemphill's statement.

---

[14] See *Turner*, supra; *Kelly v. State*, 184 Ga. App. 337, 340 (2) (361 SE2d 659) (1987) ("The totality of the evidence was sufficient to connect defendant to the possession of the drugs, even though the evidence would have authorized a finding that others had equal access to the drugs."); see also *Townsend v. State*, 253 Ga. App. 316, 317 (558 SE2d 849) (2002) ("[I]f there is evidence allowing the jury to conclude that another party with access did not place the drugs in the vehicle [owned by the defendant], . . . the jury may conclude that the only reasonable hypothesis is that the defendant possessed the drugs."); *Pitts v. State*, 206 Ga. App. 635-636 (1) (426 SE2d 257) (1992) ("Even assuming that evidence of another individual's mere prior presence in the truck may have been sufficient to rebut the presumption of appellant's possession, it certainly did not mandate a directed verdict of acquittal, because that individual denied placing the [drugs] in the truck.").

[15] See *Moore v. State*, 257 Ga. App. 157, 158 (1) (571 SE2d 810) (2002).

[16] *Collins v. State*, 253 Ga. App. 899, 900 (1) (560 SE2d 767) (2002).

[17] The State may present expert testimony that a specific amount of drugs is greater than a person would possess for personal use. See *Glenn v. State*, 251 Ga. App. 336, 338-339 (2) (553 SE2d 323) (2001). While Agent Hemphill was not officially tendered as an expert witness, Bussey did not object to his testimony.

[18] See id. at 339 ("[A] large amount of cocaine can be considered, in and of itself, evidence of intent to distribute.").

[19] See *Collins*, supra.

Bussey did not renew his motion or ask for additional relief after the trial court gave this instruction.

"It is a longstanding rule in Georgia that in order to preserve the issue for appellate review after curative instructions are given the motion for mistrial must be renewed. If the trial court's curative instructions were not sufficient, defendant should have sought additional relief."[20] Because "[Bussey's] silence after the trial court's purported corrective action amounts to a waiver," we will not address this issue on appeal.[21]

3. Bussey's final enumeration of error — that the trial court erred in denying his motion to suppress — also lacks merit. A defendant may move to suppress evidence seized during the execution of a search warrant on grounds that a magistrate issued the warrant without probable cause.[22] In reviewing the magistrate's probable cause determination, we apply the "totality of the circumstances" test, which provides that:

> the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.[23]

Under this test, the reliability and veracity of an informant are relevant considerations.[24] Focusing on these considerations, Bussey argues that the magistrate lacked sufficient information from which to determine the informant's reliability. We disagree.

We have identified three factors that help a magistrate assess reliability: "(1) the type of information previously supplied by the informant, (2) the use to which the information was put, and (3) the elapsed time since the information was furnished."[25] However, as long as the magistrate has sufficient information to analyze the

---

[20] (Punctuation and footnote omitted.) *Wells v. State*, 243 Ga. App. 629, 631 (3) (534 SE2d 106) (2000); see also *Woodham v. State*, 263 Ga. 580, 581-582 (3) (439 SE2d 471) (1993); *Williams v. State*, 253 Ga. App. 453, 456 (3) (559 SE2d 512) (2002).

[21] (Punctuation omitted.) *Mckee v. State*, 258 Ga. App. 99, 102 (4) (572 SE2d 740) (2002).

[22] See OCGA § 17-5-30 (a) (2).

[23] *Sanders v. State*, 252 Ga. App. 609, 610 (1) (556 SE2d 505) (2001).

[24] See *Pailette v. State*, 232 Ga. App. 274, 277 (501 SE2d 603) (1998).

[25] (Punctuation omitted.) *Claire v. State*, 247 Ga. App. 648, 649 (544 SE2d 537) (2001).

informant's reliability, each of these factors need not be shown.[26] In this case, Agent Hemphill provided the magistrate with a sworn affidavit, stating, in relevant part:

> On October 18, 2001 at approximately 11:00 a.m.[,] Agent Jonathan Hemphill received information from Agent Ken Partridge with the Narcotics Task Force who spoke with C.I. #125 and he advised that he saw [m]arijuana inside of [Jordan's residence] within the past 24 hours in plain view and packaged [for] sale. This [c]onfidential informant has been reliable in the past and has given [i]nformation that has led to at least eight arrest[s] and convictions and has been proven reliable. I have known [C]onfidential [I]nformant #125 for at least five years. C.I. #125 knows how [m]arijuana looks and how it is packaged for sale and also Confidential Informant has purchased [m]arijuana for the Narcotics Task Force which has led to several arrest[s] and convictions.

Hemphill thus established that the confidential informant had provided information in the past, leading to numerous arrests and convictions. Hemphill further averred that he knew the informant, who had previously purchased marijuana for the task force and could identify the drug, as well as the type of packaging used for sale. In addition, the affidavit revealed that the informant had seen marijuana packaged for sale in the residence within the past 24 hours. While Bussey is correct that mere conclusory statements cannot establish an informant's reliability,[27] Hemphill's affidavit provided actual facts, allowing the magistrate to make a well-informed, independent analysis.[28]

On appeal, Bussey asserts that Hemphill did not know the informant personally. But Hemphill swore in his affidavit that he had known the informant "for at least five years," leaving Bussey's assertion without a basis in fact. Perhaps Bussey takes issue with the fact that Hemphill received the tip from the informant via a fellow officer on the task force, Ken Partridge. As we have noted, however, "observations by fellow officers of the Government engaged in a common

---

[26] See id.

[27] See *Pailette*, supra at 277.

[28] See *Sanders*, supra at 610-611 (affidavit providing that informant had previously supplied information leading to seizure of contraband and arrests, was familiar with marijuana, and personally attested to presence of marijuana in residence within past seventy-two hours deemed sufficient); *Crawford v. State*, 233 Ga. App. 323, 326-327 (4) (504 SE2d 19) (1998) (affidavit indicating that informant had been used eight to ten times in the past, leading to the arrest of ten to twelve persons, and had been in the defendant's house in past seventy-two hours found sufficient).

investigation are plainly a reliable basis for a warrant applied for by one of their number."[29]

We similarly reject Bussey's assertion that the warrant is invalid because Hemphill omitted information about the informant's paid status. While "attesting officers and magistrates should make every effort to see that supporting affidavits reflect the maximum indication of reliability, the absence of certain information, standing alone, such as the informant's felony history or the fact that he was a paid informant is not determinative."[30] If information is knowingly or recklessly omitted, however, suppression could result.[31]

In this case, the omission is not fatal. Hemphill apparently knew that the informant had been paid, but simply did not believe this information "ma[d]e any difference." "While the better practice would have been for [Hemphill] to provide the magistrate with all of the information he possessed regarding the informant's reliability, the lack of specificity about the informant's [paid status] was offset by the other indicia of the informant's reliability."[32] Accordingly, the trial court did not err in refusing to suppress the evidence.[33]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED AUGUST 12, 2003 —
RECONSIDERATION DISMISSED SEPTEMBER 4, 2003 — ■

*William A. Adams, Jr.,* for appellant.
*William T. McBroom III, District Attorney, Gail M. Travillian, Assistant District Attorney,* for appellee.

---

[29] (Punctuation omitted.) *Claire,* supra at 650; accord *Deal v. State,* 199 Ga. App. 184, 185 (1) (404 SE2d 343) (1991).

[30] (Citations and punctuation omitted.) *Elom v. State,* 248 Ga. App. 273, 274 (1) (546 SE2d 50) (2001).

[31] See *Perkins v. State,* 220 Ga. App. 524, 525 (2) (469 SE2d 796) (1996).

[32] *Roberson v. State,* 246 Ga. App. 534, 537 (1) (540 SE2d 688) (2000).

[33] See id. at 537-538; compare *Lyons v. State,* 258 Ga. App. 9, 11 (1) (572 SE2d 632) (2002) (evidence suppressed where affiant omitted fact that informant was paid, as well as fact that informant had not previously given a tip to police).