**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0764. MARTINEZ-VARGAS v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion to suppress, Geovany Martinez-Vargas was convicted of possession of marijuana with intent to distribute in a stipulated bench trial. On appeal from his conviction, he contends that the trial court erred in denying his motion to suppress because the affidavit supporting the search warrant application was legally insufficient to support a finding of probable cause. Martinez-Vargas further contends that he received ineffective assistance of trial counsel and that we should remand the case for a hearing on the issue of his trial counsel's ineffectiveness, as this is his first opportunity to raise the issue. For the reasons discussed below, we are constrained to affirm the trial court's denial of the motion

to suppress. However, we remand the case to the trial court for a determination of Martinez-Vargas's ineffectiveness claim.

1. The standards that apply to the different levels of judicial scrutiny involved in the warrant process are well-established. A magistrate may issue a search warrant only if the affidavit supporting the warrant application sets forth "facts sufficient to show probable cause that a crime is being committed or has been committed." OCGA § 17-5-21 (a).

> In determining whether probable cause exists, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citations and punctuation omitted.) *Daniel v. State*, 306 Ga. App. 48, 50 (2) (701 SE2d 499) (2010). See *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009).

In evaluating a magistrate's decision to issue a search warrant upon a defendant's filing of a motion to suppress, a trial court "may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference

2

must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause." *Palmer*, 285 Ga. at 77. The trial court should remain cognizant that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (Citation and punctuation omitted.) Id.

When this Court thereafter reviews the trial court's grant or denial of the motion to suppress, we apply the totality of the circumstances analysis enunciated in *Illinois v. Gates*, 462 U.S. 213 (103 SC 2317, 76 LE2d 527) (1983), and we ask whether the magistrate "had a 'substantial basis' for concluding that probable cause existed to issue the search warrant," always mindful that the magistrate's conclusion is to be afforded "substantial deference." (Citation and punctuation omitted.) *Palmer*, 285 Ga. at 78. See *Henson v. State*, ___ Ga. App. ___ (Case No. A11A1830, decided on Feb. 16, 2012). In conducting this inquiry, we construe the evidence in the light most favorable to upholding the trial court's decision on the motion to suppress, adopt its findings on disputed facts and credibility unless clearly erroneous, and review de novo its application of the law to undisputed facts. *Palmer*, 285 Ga. at 77. See *Robinson v. State*, 312 Ga. App. 736, 745 (4) (a) (719 SE2d 601) (2011).

3

Guided by these principles, we turn to the evidence adduced at the hearing on the motion to suppress. The evidence showed that on April 5, 2010, a special agent assigned to the Narcotics Unit of the Henry County Police Department received information that a silver Toyota Tacoma truck with a matching camper top bearing a "Georgia Educator" license tag might be involved in transporting large quantities of illegal narcotics to several residences in Henry County. Officers saw a truck matching that description several times in the area of the Willow Springs subdivision in Henry County, but they initially were unsuccessful in tracking the truck to a particular residence there.

On May 25, 2010, a police sergeant who oversaw the Narcotics Unit observed the truck enter the Willow Springs subdivision. He waited a few minutes and then entered the subdivision to look for the truck. The sergeant located the truck parked in the driveway of 173 Willow Springs Lane, contacted the special agent who had received the original tip about the truck, and advised him of its location. The special agent met the sergeant in the subdivision and confirmed that the truck parked in the driveway matched the description provided in the original tip.

Because the truck had been seen at 173 Willow Springs Lane, the special agent began investigating the residence. Additional surveillance was conducted, but the

truck was not seen again at the residence after May 25. The agent determined the garbage pick-up schedule for the Willow Springs subdivision, and on June 1, 2010, he conducted a "trash pull" at the residence where the truck had been seen. In searching through the trash, the agent was unable to find any identifying information on any of the mail because all of it had been shredded or torn by hand. However, the agent did find a compressed marijuana bud in the trash. Based upon his knowledge, training, and experience in the Narcotics Unit, the agent believed that the compressed nature of the bud was significant because it indicated that the bud was part of a large bale of marijuana.

After finding the compressed marijuana bud, the special agent and other narcotics officers conducted additional surveillance at the residence on June 3, 2010. They observed a sports utility vehicle in the driveway backed up to the closed garage. Two men later identified as Jose Alfredo Sanchez-Valencia and Manuel Zuniga were observed leaving the residence and getting inside the vehicle. The special agent and a police lieutenant who served as the commander of the Narcotics Unit then approached the two men, requested identification, and asked to speak with them.

Because Sanchez-Valencia could not speak English, the special agent and lieutenant spoke with Zuniga. When the lieutenant walked between the garage door

5

and the rear of the truck to talk to Zuniga, he smelled raw marijuana, but he could not determine the exact source of the odor.

When asked by the lieutenant if he lived at the residence, Zuniga responded that he was staying there but that the homeowner was away on business. The lieutenant asked Zuniga for consent to search the residence, but Zuniga responded that the officers "needed a warrant." Zuniga also informed the lieutenant that another man was asleep in a bedroom inside the residence and indicated that there were two handguns in the same bedroom.

After speaking with Zuniga, the lieutenant informed him that officers would be performing a "protective sweep" of the residence. Officers from the Henry County Criminal Apprehension and Gang Enforcement ("C. A. G. E.") unit then were called to the scene to perform a "protective sweep" for people inside the residence. During the subsequent "protective sweep," officers from the C. A. G. E. unit entered the residence without a warrant. Although the officers were unable to locate any individuals inside the residence, they saw a large amount of marijuana in a bedroom closet. The officers relayed this information to the special agent, who had stayed outside.

Later that day, the special agent submitted an affidavit in support of a search warrant for the residence to a magistrate in Henry County. The affidavit contained the following factual assertions: (1) on April 5, 2010, the agent had been informed by a "reliable source" that a silver Toyota Tacoma truck with a matching camper top bearing a "Georgia Educator" license tag was possibly involved in transporting large quantities of illegal narcotics to several residences in Henry County;[1] (2) on May 25, 2010, an officer observed the aforementioned truck parked at 173 Willow Springs Lane; (3) garbage from that residence which was searched by the agent during a "trash pull" on June 1, 2010 contained a "compressed" marijuana bud, which the agent knew "by knowledge, training[,] and experience to be from a large bale of marijuana"; (4) the police lieutenant who approached Sanchez-Valencia and Zuniga during the surveillance on June 3, 2010 smelled the odor of raw marijuana "coming from the house" while standing near the garage; and (5) a large amount of marijuana had been observed in plain view in the master bedroom closet when officers from the

---

[1] At the hearing on the motion to suppress, the special agent clarified that the "reliable source" was a special agent with the federal Drug Enforcement Agency. Because this information was never conveyed to the magistrate who evaluated the warrant application, a reviewing court cannot consider it in deciding whether probable cause existed for the magistrate's issuance of the warrant. See *Lyons v. State*, 258 Ga. App. 9, 10 (1) (572 SE2d 632) (2002).

7

C. A. G. E. unit entered the residence on June 3, 2010 to secure it after learning that another individual and firearms were located inside. No oral testimony was provided to the magistrate in support of the search warrant application. Based on the assertions in the search warrant affidavit, the magistrate issued the warrant.

When the officers executed the search warrant, they found defendant Martinez-Vargas hiding in the attic with approximately $10,000 in United States currency. Additionally, in the master bedroom, the officers found almost $18,000 in United States currency in a drawer, two loaded handguns, and 23 bundles of marijuana that weighed approximately 22 pounds apiece. A second bedroom contained an additional 17 bundles of marijuana. Officers also found buds of marijuana, shrink wrap, cellophane rolls, an electronic parcel scale, a drug ledger, and a cash regulator. In total, the officers seized approximately 750 pounds of marijuana from the residence.

Martinez-Vargas moved to suppress the marijuana and other items seized from the residence. He maintained that the "protective sweep" was unconstitutional, that the affidavit supporting the search warrant application contained false and illegally obtained information, and that insufficient evidence in the affidavit, once the improper information was deleted, supported the magistrate's finding of probable cause for issuance of the search warrant.

8

After conducting an evidentiary hearing, the trial court found that the purported "protective sweep" of the residence had been unconstitutional because it was not necessary for officer safety. The trial court further found that the assertion in the affidavit that the lieutenant involved in the June 3, 2010 surveillance had smelled marijuana "coming from the house" while near the garage was partially false because the lieutenant had testified at the evidentiary hearing that, although he had smelled raw marijuana while near the garage, he had been unable to determine the exact source of the odor. The trial court emphasized, "These problems with the application for the search warrant are serious and the Court does not condone the illegal police conduct which occurred." Nevertheless, the court ultimately upheld the validity of the search warrant on the ground that, once the false and illegally obtained information was omitted from the affidavit, the remaining untainted information still would support a finding of probable cause. Consequently, the trial court denied Martinez-Vargas's motion to suppress.

Martinez-Vargas moved for the trial court to reconsider its denial of his motion to suppress, and the trial court denied that motion. Following a bench trial at which he stipulated to the evidence presented at the motion to suppress hearing, Martinez-Vargas was convicted of possession of marijuana with intent to distribute.

On appeal from his conviction, Martinez-Vargas contends in several related enumerations of error that the trial court erred in denying his motion to suppress the evidence seized from the residence pursuant to the search warrant. In this regard, he claims that the trial court erred in concluding that the factual assertions remaining in the affidavit after deleting the false and illegally obtained information were sufficient to support the magistrate's finding of probable cause for issuance of the search warrant. We disagree.

If false information is included in an affidavit supporting an application for a search warrant, that information must be deleted, and the affidavit must be reexamined to determine whether probable cause exists to issue the warrant in the absence of the deleted information. See *Carson v. State*, __ Ga. App. __ (1) (b) (Case No. A11A2303, decided on March 1, 2012); *Daniel*, 306 Ga. App. at 52 (2). Likewise, if the affidavit

> contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

10

(Citations and punctuation omitted.) *Rothfuss v. State*, 160 Ga. App. 863, 864 (1) (288 SE2d 579) (1982). See *Glenn v. State*, 288 Ga. 462, 464 (2) (704 SE2d 794) (2011).

The trial court committed no error in finding that after the false and illegally obtained information in the search warrant affidavit had been deleted, there still was sufficient untainted information to support a finding of probable cause for issuance of the warrant. Specifically, the untainted information in the affidavit reflecting that a compressed marijuana bud was found in the garbage of the residence on June 1, 2010, that the bud was from a large bale of marijuana based upon the special agent's knowledge, training, and experience, and that the lieutenant smelled raw marijuana while near the garage of the residence two days later, would support a finding of probable cause.[2] While the odor of marijuana alone might be insufficient to provide probable cause for the search of a residence, see, e. g, *State v. Pando*, 284 Ga. App. 70, 76-77 (2) (a) (643 SE2d 342) (2007), it can serve as one of the factors, under the

_____

[2] Because the factual assertions regarding the compressed marijuana bud and the smell of raw marijuana near the garage by themselves would support a finding of probable cause, we need not address Martinez-Vargas's argument that the trial court erred by also relying on the tip supplied to the agents about the truck observed outside the residence on May 25, 2010. See generally *Langford v. State*, 213 Ga. App. 232, 233-234 (444 SE2d 153) (1994) (discussing standard for reviewing whether probable cause could be predicated on unnamed informant's tip).

11

totality of the circumstances, that will support a finding of probable cause. See *Boldin v. State*, 282 Ga. App. 492, 495 (2) (639 SE2d 522) (2006); *State v. Fossett*, 253 Ga. App. 791, 793 (1) (560 SE2d 351) (2002). Here, there was the additional evidence of the compressed marijuana bud found in the trash that the special agent opined had come from a large bale of marijuana, and we have held that the discovery of drugs in the trash of a residence can provide a substantial basis for concluding that probable cause existed to issue a search warrant for the residence. See *Locher v. State*, 293 Ga. App. 67, 70 (2) (a) (666 SE2d 468) (2008); *State v. Davis*, 288 Ga. App. 164, 165-166 (653 SE2d 311) (2007); *Butler v. State*, 192 Ga. App. 710, 712 (1) (386 SE2d 371) (1989). Accordingly, we conclude that under the totality of the circumstances, the lawfully obtained, accurate information contained in the search warrant affidavit would have justified the issuance of the warrant by the magistrate.

Martinez-Vargas, however, contends that the trial court should not have relied on the factual assertion in the affidavit that the lieutenant smelled raw marijuana while near the garage of the residence, given that there were no facts in the affidavit reflecting that the lieutenant had the knowledge, training, or experience to identify

12

that specific odor.[3] But "[o]bservations of fellow officers of government engaged in a common investigation are a reliable basis for a warrant applied for by one of their number." *McNeal v. State*, 133 Ga. App. 225, 228 (2) (211 SE2d 173) (1974). Thus, when a police officer supplies information to another officer that the latter then includes in a search warrant affidavit, the reliability of the officer informant can be presumed when assessing whether probable cause exists for issuance of the warrant. See *McConville v. State*, 228 Ga. App. 463, 467 (2) (491 SE2d 900) (1997). See *Shivers v. State*, 258 Ga. App. 253, 256-257 (573 SE2d 494) (2002) (reliability of police officer informant who smelled burned marijuana could be presumed as a matter of law). It follows that the magistrate and the trial court were authorized to presume that the lieutenant was reliable in stating to the special agent who composed the affidavit that the odor he smelled was raw marijuana.

Martinez-Vargas further contends the trial court should not have relied on the factual assertion regarding the odor of raw marijuana because the lieutenant was unable to determine the exact source of the smell. Yet, as the trial court found, to the extent that the affidavit stated that the lieutenant was standing near the garage of the

---

[3] Martinez-Vargas does not contend that his Fourth Amendment rights were abridged by the lieutenant standing on the driveway near the garage.

13

residence when he smelled the raw marijuana, the affidavit was accurate. And even if the lieutenant could not identify the exact source of the smell, the fact that he was standing in close proximity to the residence when he smelled it, coupled with the drug evidence found in the trash two days earlier, was sufficient to establish probable cause to search the residence.

Lastly, Martinez-Vargas contends that the trial court should not have relied on the factual assertion in the affidavit that a compressed marijuana bud was found in the trash of the residence, because there were not enough facts in the affidavit connecting him or the residence to the drugs found in the trash.[4] In this respect, he emphasizes that the affidavit did not refer to any mail or other documents found in the trash containing his name or the address of the residence, and did not state that anyone from the residence had been observed carrying items from the residence to the trash. But, in assessing whether probable cause exists, courts are to take a "practical, common-sense" approach. (Citations omitted.) *Palmer*, 285 Ga. at 77. While there was no assertion in the affidavit that mail or other documents found in the trash

---

[4] Martinez-Vargas does not challenge the legality of the search of the trash. See *Brundige v. State*, 310 Ga. App. 900, 906 (3) (714 SE2d 681) (2011) (placing garbage on the curb for collection constitutes an act of abandonment that terminates any Fourth Amendment protection).

14

contained any identifying information (given that all of the mail had been shredded or torn by hand) or that the officers specifically observed someone carrying items from the residence to the trash, the affidavit did assert that the special agent had conducted a "trash pull" at the residence, and that the compressed marijuana bud was recovered as part of that "trash pull." We conclude that these factual assertions contained in the affidavit would support a "common-sense decision" that there was a "fair probability that contraband or evidence of a crime" would be found in the residence. (Citation and punctuation omitted.) *Davis*, 288 Ga. App. at 166.

For these combined reasons, the trial court did not err in concluding that the remaining untainted information would support a finding of probable cause and in denying Martinez-Vargas's motion to suppress. In affirming the trial court, we in no way condone the decision of the officers in this case to conduct a purported "protective sweep" of the inside of the residence without a warrant. Nevertheless, as the trial court ultimately concluded, that does not end the matter under our jurisprudence, where, as here, the search warrant affidavit contains additional probative information untainted by the misconduct of the officers.

15

2. Martinez-Vargas also argues that, because he has now been appointed new counsel, the case should be remanded so that the trial court can consider his ineffective assistance claim in the first instance.

"If an appellant raises on appeal the issue of ineffectiveness of his original trial counsel, and appellant did not have the opportunity to raise such issue in the trial court, we will ordinarily remand the case to the lower court for resolution of such issue, with the right in the appellant to appeal the ruling." (Footnote omitted.) *Gregory v. State*, 277 Ga. App. 664, 669 (5) (627 SE2d 79) (2006). "Nevertheless, remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in [*Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984)]." (Citation and punctuation omitted.) *Jones v. State*, 310 Ga. App. 705, 707, n. 1 (713 SE2d 895) (2011). The *Strickland* test requires the defendant to establish that his trial counsel's performance was deficient, and that there is a reasonable probability that the outcome of the trial would have been different, but for his counsel's deficiency. *Martinez v. State*, 303 Ga. App. 166, 171-172 (4) (692 SE2d 766) (2010). If the defendant cannot establish either one of the two prongs of the *Strickland* test, he cannot succeed on his ineffective assistance claim. Id.

16

According to Martinez-Vargas, his trial counsel was deficient for failing to raise additional arguments for why the unconstitutional "protective sweep" of the residence should have led to the suppression of the marijuana seized from there. Although somewhat unclear, Martinez-Vargas also contends that his trial counsel should have better argued, presumably in the motion for reconsideration that he filed in the court below, that the trial court's factual findings in its order denying the motion to suppress were not supported by the search warrant affidavit.

For the reasons discussed supra in Division 1, the trial court applied the appropriate test and properly concluded that there was sufficient accurate information remaining in the search warrant affidavit, untainted by the unconstitutional "protective sweep," to support a finding of probable cause and issuance of the warrant. Thus, it is clear from the existing record that Martinez-Vargas would be unable to succeed on his ineffective assistance claim to the extent that it arises out of the issues addressed in Division 1. See *Stevenson v. State*, 272 Ga. App. 335, 337 (1), n. 2 (612 SE2d 521) (2005) ("A trial attorney is not ineffective in failing to pursue a futile . . . argument in the accused's defense.").

However, Martinez-Vargas also refers in his appellate brief to "other additional contentions regarding the ineffectiveness of trial counsel." To the extent that the

"other additional contentions" are unrelated to the issues resolved in Division 1, we cannot determine the merit of those contentions from the existing record. The case, therefore, is remanded to the trial court for a hearing and determination on Martinez-Vargas's claim that his trial counsel rendered ineffective assistance, with the right of Martinez-Vargas to appeal that ruling. See *Russell v. State*, 267 Ga. 865, 868 (4) (485 SE2d 717) (1997); *King v. State*, 238 Ga. App. 575, 577 (4) (519 SE2d 500) (1999).[5]

*Judgment affirmed and case remanded with direction. Adams and McFadden, JJ., concur.*

---

[5] In a separate motion filed with this Court, Martinez-Vargas argues that the case should be remanded for the trial court to consider his ineffective assistance claim. His motion is hereby GRANTED for the reasons discussed supra in Division 2.