**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 7, 2016**

# In the Court of Appeals of Georgia

A16A0517. COLEMAN v. THE STATE.

PHIPPS, Presiding Judge.

On December 8, 2011, law enforcement officers executed a search warrant at an apartment being leased by Corey Ronqueze Coleman and discovered therein cocaine, marijuana, marijuana plants, and various drug paraphernalia such as boxes of plastic baggies, digital scales, and a notebook of instructions on cultivating marijuana plants. Coleman was indicted for possession of cocaine, manufacturing marijuana, and possession of marijuana with the intent to distribute. A jury found Coleman guilty as charged, and he was convicted thereon. Coleman filed a motion for new trial claiming ineffective assistance of trial counsel, but the trial court denied the motion. In this appeal, Coleman challenges the rejection of his ineffectiveness claim. We affirm.

Pursuant to *Strickland v. Washington*,[1]

> [i]n order to succeed on [a] claim of ineffective assistance, [a defendant] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If [the defendant] fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[2]

1. Coleman complains that his trial lawyer failed to pursue a motion to suppress the drug evidence, arguing that the underlying search warrant was issued without the requisite showing of probable cause. At the hearing on Coleman's motion for new trial, Coleman's trial lawyer testified that he had not pursued a suppression motion because he had determined that such motion would not be granted. The lawyer further testified that he and Coleman had decided to pursue a defense that another individual was the sole resident of the apartment, which defense did not hinge upon suppressing the drug evidence.

---

[1] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[2] *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citations and punctuation omitted).

2

"Where, as here, trial counsel's failure to [pursue] a motion to suppress is the basis for a claim for ineffective assistance, the burden is on the appellant to make a strong showing that the damaging evidence would have been suppressed had counsel [pursued] the motion."[3] As explained below, Coleman has failed to meet his burden.

We first reiterate the standards applicable to the various levels of judicial scrutiny involved in the warrant process.

> A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed.[4] The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The trial court may then examine the issue as a first level of review, guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause. A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for

---

[3] *Smith v. State*, 296 Ga. 731, 733 (2) (a) (770 SE2d 610) (2015) (citation omitted).

[4] OCGA § 17-5-21 (a).

3

searches conducted pursuant to a warrant. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Our appellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis set forth in *Illinois v. Gates*.[5] The duty of the appellate courts is to determine if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search warrant. The Fourth Amendment requires no more.[6]

Next, we turn to the circumstances presented by the instant case. On December 8, 2011, a narcotics officer with the Gwinnett County Police Department filed with the Magistrate Court of Gwinnett County an application seeking a warrant to search a specified apartment for marijuana and associated contraband. In support of the application, the officer presented the magistrate with his affidavit.

Coleman asserts, and the record supports, that no oral testimony was considered by the magistrate as part of the warrant application process. Coleman therefore posits that the magistrate's finding of probable cause was based solely upon

---

[5] 462 U. S. 213 (103 SCt 2317, 76 LE2d 527) (1983).

[6] *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009) (citations and punctuation omitted).

4

the officer's affidavit. We thus focus on the information set forth within the four corners of the affidavit.

At the beginning of the affidavit, the officer set forth as background that, on December 8, 2011, two other police officers – Officer Copeland and Officer Nassery – approached a male who was walking within the apartment complex because those officers had discerned that the male was engaging in suspicious behavior. The affidavit, as Coleman particularly recites on appeal, went on to state:

> Officer[s] Copeland and Nassery then made contact with the suspect who was identified as William Wilborn. Once Officer Copeland made contact with Wilborn he noticed a small white chunky substance in the males [sic] hand which based on his training and experience he recognized to be crack cocaine[.] Officer Copeland NIK tested the white chunky substance and received a positive response indicating the presence of cocaine. Officer Copeland then tried to retrieve the crack cocaine from Wilborn, where Wilburn [sic] in return attempted to flee. A brief struggle between officers and Wilborn occurred, where Wilborns [sic] shirt came up and revealed that he has [sic] a small hand gun in his possession. Officers finally placed Wilborn in custody. Officer Copeland then read Wilborn his Miranda rights which he stated he understood and wished to answer some questions. Officer Copeland asked Wilborn if he had anymore contraband in his possession and Wilborn stated he had some marijuana in his groin area. Officer Copeland NIK tested the marijuana and received a positive response

5

indicating the presence [sic] marijuana. Wilborn stated he purchased the marijuana from a black male in an apartment located within the complex. He went on to state he and three other males were at the location to rob the individuals at the apartment for their illegal narcotics. Sgt. Tonelli . . . then spoke to Wilborn. Wilborn gave Sgt Tonelli detailed directions to the apartment where he purchased the marijuana. The apartment in question turned out to be [the specific apartment leased by Coleman]. Wilburn [sic] stated while he was in the apartment purchasing the marijuana he saw what he believed to be two pounds of marijuana. He also stated there was a black female and black male inside. Wilborn stated the black male had a black handgun located on him. Wilborn stated he also saw two shotguns while in the apartment next tot [sic] the front door. Sgt. J. Morales . . . and Officer Nassery attempted to make contact with the occupants of the apartment and received no answer. While at the door both officers were able to smell the overwhelming smell of unburned marijuana coming from the door. Affiant believes there is enough probable cause to believe there will be more marijuana located at [the apartment specified] based on the following facts. First, the statement from William Wilborn where he stated he purchased marijuana from the apartment where [sic] stated he saw additional marijuana inside. And the fact that two officers smelled fresh unburned marijuana coming from the apartment. Affiant therefore requests a search warrant be issued for [the specified apartment].

Coleman maintains on appeal that the affidavit failed to supply an adequate basis for determining that probable cause existed because: the affidavit did not set

6

forth sufficient facts from which the magistrate could ascertain the veracity of Wilborn, who had served as a key informant; the officers' detection of the odor of marijuana at the apartment door was insufficient as a sole basis for establishing probable cause; the officers' conduct at the apartment door amounted to an unlawful search; and the averring officer failed to apprise the magistrate of Wilborn's prior convictions. According to Coleman, had his trial lawyer cited these "insufficiencies" in pursuing a suppression motion, the trial court would have been required to grant the motion. We cannot agree.

(a) Any deficiency in the affidavit with respect to Wilborn's veracity was not fatal. Under the *Gates* analysis, an informant's veracity, reliability, and basis of knowledge are neither "independently dispositive, [nor] irrelevant. They are instead several of a number of relevant factors, which we must review giving great deference to the magistrate's determination of probable cause, keeping in mind that 'affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation.'"[7] Here, Wilborn's tip that marijuana was being sold out of a particular apartment was sufficiently corroborated by: his own attempt to flee and brief struggle

---

[7] *Curry v. State*, 255 Ga. 215, 217 (1) (336 SE2d 762) (1985), citing *Gates*, supra, 103 U. S. at 235 (103 SCt at 2329-31); see *Palmer*, supra at 79.

with the officers he encountered in the apartment complex's parking lot; the police seizure of suspected illegal drugs and a handgun from Wilborn's person; the results of immediate field testing by police indicating that the seized substances were cocaine and marijuana; and the police officers' detection of a strong odor of unburned marijuana emanating from the exact apartment that Wilborn had identified. Indeed, case law prevailing at the relevant time[8] – i.e., *State v. Pando*,[9] *State v. Charles*,[10] *Shivers v. State*,[11] *State v. Fossett*,[12] and *Patman v. State*[13] – recognized that the odor

---

[8] Coleman's trial was conducted in January 2013.

[9] 284 Ga. App. 70 (643 SE2d 342) (2007), overruled to the extent stated in *State v. Kazmierczak*, 331 Ga. App. 817, 823 (771 SE2d 473) (2015). The *Kazmierczak* decision, as expressed in *State v. Camp*, 335 Ga. App. 730, 731, n. 1 (782 SE2d 819) (2016), "modified the doctrine in Georgia law that had previously held that evidence regarding the odor of marijuana alone was insufficient to establish probable cause for a warrant."

[10] 264 Ga. App. 874 (592 SE2d 518) (2003), disapproved to the extent stated in *Kazmierczak*, supra.

[11] 258 Ga. App. 253 (573 SE2d 494) (2002), disapproved to the extent stated in *Kazmierczak*, supra.

[12] 253 Ga. App. 791 (560 SE2d 351) (2002), disapproved to the extent stated in *Kazmierczak*, supra.

[13] 244 Ga. App. 833 (537 SE2d 118) (2000).

8

of marijuana could be considered in determining whether, under the totality of the circumstances, probable cause existed to authorize the issuance of a search warrant.[14]

In light of all the circumstances set forth in the affidavit, the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant.[15] Thus, contrary to Coleman's claim on appeal, the trial court – bound to

[14] *Pondo*, supra at 76-77 (2) (a) ("[T]he odor of marijuana may be considered as part of the totality of circumstances in determining whether there is sufficient probable cause to support a search warrant.") (citation omitted); *Charles*, supra at 876 (2) ("[T]he odor of marijuana is one factor that may be considered in determining whether, under the totality of the circumstances, probable cause exists to authorize the issuance of a search warrant.") (citations and punctuation omitted); *Shivers*, supra at 257 ("The odor of marijuana is one factor that may be considered in determining whether, under the totality of the circumstances, probable cause exists to authorize the issuance of a search warrant.") (footnote omitted); *Patman*, supra at 835 ("The odor of marijuana is one factor that may be considered in determining whether, under the totality of the circumstances, an officer had probable cause to institute a search.") (footnote omitted); *Fossett*, supra at 793 (1) ("The odor of marijuana is one factor that may be considered in determining whether, under the totality of the circumstances, an officer had probable cause to institute a search.") (citation and punctuation omitted).

[15] See *Cochran v. State*, 281 Ga. 4, 5-6 (635 SE2d 701) (2006) (rejecting claim that warrant was invalid because the underlying affidavit contained information from a third party then unknown to police, where the affidavit otherwise informed the magistrate "of some of the underlying circumstances supporting the affiant's underlying conclusions," and therefore "the warrant did not rest solely on the reliability of [the third party]"); *Martinez-Vargas v. State*, 317 Ga. App. 232, 236-239 (1) (730 SE2d 633) (2012) (concluding that affidavit showed probable cause to search residence, where information in affidavit reflected that a compressed marijuana bud had been found in trash of the residence; that, based upon the averring officer's

9

accord deference to the magistrate's decision to issue a search warrant based on a finding of probable cause – would *not* have been required to grant a motion to suppress the drug evidence.[16] We conclude, therefore, that Coleman has failed to demonstrate that his trial counsel performed deficiently by failing to pursue a suppression motion.[17]

(b) In so concluding, we have determined that *State v. Kazmierczak*,[18] relied upon by Coleman, does not control this case to an outcome in his favor.

---

knowledge, training, and experience, the bud was from a large bale of marijuana; and that a lieutenant had smelled raw marijuana while standing near the garage, notwithstanding the lack of facts in the affidavit reflecting that the lieutenant had knowledge, training, or experience to identify that specific odor because "when a police officer supplies information to another officer that the latter then includes in a search warrant affidavit, the reliability of the officer informant can be presumed when assessing whether probable cause exists for issuance of the warrant") (citations omitted), disapproved to the extent stated in *Kazmierczak*, supra; see generally *Bigby v. State*, 250 Ga. App. 529-530 (1) (552 SE2d 129) (2001) (probable cause arose from "odor of marijuana, together with [suspect's] flight").

[16] See *Palmer*, supra; *Martinez-Vargas*, supra; see generally *Bigby*, supra.

[17] See *Hampton v. State*, 295 Ga. 665, 670 (2) (763 SE2d 467) (2014) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel.").

[18] Supra.

10

Coleman points out that *Kazmierczak* overruled/disapproved (to the extent therein stated)[19] cases including *Pando*, *Charles*, *Shivers*, *Fossett,* and *Patman*. Notwithstanding, Coleman's "trial counsel was not ineffective for failing to predict [the 2015 decision]."[20] And, at any rate, *Kazmierczak* is inapposite because it addressed the extent to which the odor of marijuana emanating from a specified location could be "the *sole* basis for the issuance of a search warrant for that location."[21] Here, as detailed above, the odor of marijuana emanating from the apartment was *not* the sole basis for the issuance of the search warrant.[22]

(c) We have also found no merit in Coleman's argument that the requisite showing of probable cause was not demonstrated because the officers' detection of the odor of marijuana at the apartment door constituted an illegal search.

---

[19] See id. at 823 (disapproving a line of cases to the extent stated therein).

[20] *Hill v. State*, 290 Ga. 493, 499 (7) (722 SE2d 708) (2012) (citation and punctuation omitted); *Deleon-Alvarez v. State*, 324 Ga. App. 694, 708 (7) (751 SE2d 497) (2013) (same); see *Rickman v. State*, 277 Ga. 277, 280 (2) (587 SE2d 596) (2003) (noting that "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law") (punctuation and footnote omitted).

[21] *Kazmierczak*, supra at 823 (emphasis supplied).

[22] See Division 1 (a), supra.

To support that argument, Coleman has relied upon *Florida v. Jardines*.[23] In that case, the United State Supreme Court considered whether police use of "a *drug-sniffing dog* on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment."[24] The Court answered that question in the affirmative,[25] and thus affirmed the decision invaliding a warrant that had been issued based upon information gathered as a result of that impermissible "search."[26]

Here, no drug-sniffing dog was employed to investigate the contents of the apartment. As set out in the affidavit, after Wilborn disclosed to police the apartment where he had purchased the marijuana seized from his person, two officers "attempted to make contact with the occupants of the apartment and received no answer. While at that door both officers were able to smell the overwhelming smell of unburned marijuana coming from the door." Even *Jardines* reaffirmed the principle that "a police officer not armed with a warrant may approach a home and knock, precisely

---

[23] 133 SCt 1409 (185 LEd2d 495) (2013).

[24] Id. at 1413 (emphasis supplied).

[25] Id. at 1417-1418 (III).

[26] See id. at 1414 (I).

because that is no more than any private citizen might do."[27] Accordingly, Coleman's reliance upon *Jardines* is misplaced, and this challenge to the existence of probable cause is unavailing.[28]

(d) Equally unavailing is Coleman's assertion that the trial court would have granted a motion to suppress that pointed out that the affidavit contained no information about Wilborn's prior convictions. According to Coleman, had the magistrate been so apprised, the magistrate would have found that Wilborn lacked veracity and thereupon refused to issue the warrant for want of a showing of probable cause.

At the hearing on his motion for new trial, Coleman showed that in 2008, Wilborn was convicted in Gwinnett County Superior Court for: (i) possessing cocaine in April 2007; and (ii) possessing marijuana and cocaine in June 2007.

---

[27] Id. at 1416 (II) (B) (citation and punctuation omitted).

[28] See id.; *State v. Schwartz*, 261 Ga. App. 742, 744 (1) (583 SE2d 573) (2003) ("Undoubtedly, an officer may knock on the outside door of a home without implicating the Fourth Amendment.") (footnote omitted); *Strozier v. State*, 244 Ga. App. 514, 515 (535 SE2d 847) (2000) ("[W]hen a police officer enters private property only to the extent of knocking on outer doors, the Fourth Amendment is not violated. After all, such an officer is merely taking the same route as would any guest or other caller.") (citation and punctuation omitted).

"While attesting officers and magistrates should make every effort to see that supporting affidavits reflect the maximum indication of reliability, the absence of certain information, standing alone, such as the informant's felony history . . . is not determinative."[29] Here, the affidavit did not include Wilborn's prior convictions for illegal marijuana and cocaine possession,[30] but it plainly recounted that police had just seized from Wilborn what officers had field-tested and thereby believed to be cocaine; that quickly thereafter, police had discovered a handgun concealed under his clothing; that Wilborn had then revealed to police that he was also in possession of marijuana; that officers had thereupon seized from Wilborn a substance that they had field-tested and thereby believed to be marijuana; and that during their encounter with Wilborn, he had struggled with the officers and attempted to flee.[31] Hence, in light of

---

[29] *Bussey v. State*, 263 Ga. App. 56, 62 (3) (587 SE2d 134) (2003) (punctuation and footnote omitted).

[30] "If information is knowingly or recklessly omitted, . . . suppression could result." Id. (footnote omitted). But Coleman makes no assertion that the cited omission was knowingly or recklessly made.

[31] See *Palmer*, supra at 78 ("If any omissions on the part of the officer are offset by independent corroboration of criminal activity, then the magistrate may still have sufficient information to find that probable cause exists.") (punctuation omitted). Accord *Cochran*, supra at 6 (rejecting argument that the confidential drug informant was unreliable because such CI had admittedly participated in the commission of a drug crime, reasoning that if CI told police that "he was participating in . . . illegal

14

all the circumstances set forth in the affidavit, and guided by the standards applicable to the various levels of judicial scrutiny involved in the warrant process,[32] we disagree with Coleman that the trial court would have granted a motion to suppress that urged the ground that the averring officer had not informed the magistrate of Coleman's drug possession convictions.[33]

2. Coleman complains that his trial lawyer did not object at trial to the admission of the drug evidence obtained during the search. Again, Coleman asserts that the underlying warrant was not supported by probable cause. Because the trial

_____

activity, CI would be making a statement against his penal interest, which *elevates* the reliability of that statement") (emphasis supplied).

[32] See *Palmer*, supra at 77-78.

[33] See id. at 78 (reasoning that, although the appellant argued that the search warrant was deficient because the attesting officer "offered no information to the magistrate as to reliability of the unnamed CI and he failed to disclose that the CI had a criminal background, these uncontroverted omissions [did] not necessarily warrant suppression of the evidence"); *Bussey*, supra (rejecting argument that, because the affidavit omitted information about the informant's paid status, the search warrant was invalid, where the omission was adequately "offset" by other facts provided to the magistrate); *Roberson v. State*, 246 Ga. App. 534, 537 (1) (540 SE2d 688) (2000) (rejecting argument that, because the attesting investigator did not disclose to the magistrate "the charges pending against the informant or the favorable treatment he received in exchange for his cooperation," the magistrate could not determine the informant's reliability, where the omissions were offset by other facts provided to the magistrate).

15

court would have correctly overruled an objection lodged on that basis,[34] this complaint fails to show any deficiency in trial counsel's performance.[35]

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[34] See Division 1, supra.

[35] See *Hampton*, supra.

16